# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| MARC AMOURI BAKAMBIA, | Case No. 20-CV-1434 (NEB/KMM) |
| Plaintiff, | |
| v. | ORDER ACCEPTING REPORT AND RECOMMENDATION |
| PAUL P. SCHNELL, et al., | |
| Defendants. | |

Plaintiff Marc Amouri Bakambia, a prisoner at the Minnesota Correctional Facility-Stillwater, sued prison officials and healthcare providers claiming that they were deliberately indifferent to his medical needs in violation of the Eighth Amendment. Bakambia moved for an "emergency injunction" requiring the Defendants to arrange for him to see a neurology specialist. In a Report and Recommendation, United States Magistrate Judge Katherine M. Menendez recommends the Court deny Bakambia's motion. Bakambia objected. For the reasons below, the Court overrules Bakambia's objection and accepts the R&R.

## BACKGROUND

The R&R provides a thorough factual background of this case, most of which Bakambia does not object to. (ECF No. 142 ("R&R") at 1–18.) The Court incorporates the R&R's statement of facts, except those parts to which Bakambia objects. (*See* ECF No. 174

("Obj.") at 1–5 (objecting to the R&R's factual statements).) For the parts to which Bakambia objects, the Court will address the legal import of Bakambia's factual arguments below.

## ANALYSIS

The Court considers four factors in deciding whether to grant a preliminary injunction: (1) the movant's likelihood of success on the merits; (2) the threat of irreparable harm to the movant if the injunction is not granted; (3) the balance between this harm and the injury that granting the injunction will inflict on the other parties; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981). "At base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." *Id.* As the party seeking injunctive relief, Bakambia bears the burden of showing that these factors support the issuance of a preliminary injunction. *Lankford v. Sherman*, 451 F.3d 496, 503 (8th Cir. 2006).

### I. Likelihood of Success on the Merits

The likelihood of success on the merits is the most important *Dataphase* factor. *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013) (citation omitted). Bakambia must show that he has a "fair chance of prevailing." *Planned Parenthood Minn., N.D., S.D. v. Rounds*, 530 F.3d 724, 732 (8th Cir. 2008). This does not require Bakambia to establish

that he is more likely than not to prevail on the merits. *Jet Midwest Int'l Co. v. Jet Midwest Grp., LLC*, 953 F.3d 1041, 1044–45 (8th Cir. 2020) (citing *Dataphase*, 640 F.2d at 113).

To prevail on an Eighth Amendment deliberate indifference claim, Bakambia must show that he had "objectively serious medical needs" and that "the prison officials actually knew of but deliberately disregarded those needs." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (citation omitted). Prisoners, though, do not have the right to any specific course of treatment, and "prison doctors remain free to exercise their independent medical judgment." *Id.* (citation omitted). There is no Eighth Amendment violation when prison staff or healthcare providers are merely negligent or commit simple medical malpractice. *Id.* (citation omitted); *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017) (explaining that "deliberate indifference requires a highly culpable state of mind approaching actual intent").

Nothing in the record shows that Bakambia is likely to succeed on his deliberate indifference claim. The Defendants have not disregarded Bakambia's medical needs. To the contrary, the record shows that the Defendants have regularly treated Bakambia for his injuries and have addressed his medical concerns. From fall 2019 through at least summer 2020, Bakambia saw healthcare providers for his headaches and other complaints. (ECF No. 77 at 1–2, 19–20, 22–24, 27, 30–32 (ECF pagination).) The healthcare providers prescribed medication, ordered tests, and referred Bakambia to other healthcare services. (*E.g., id.* at 1–2 (prescribing medications and noting that Bakambia

3

underwent a CT scan and an EKG and had blood work done), 31 (noting that the doctor referred Bakambia to a psychiatrist).) More than once, healthcare providers considered and rejected a referral to a neurology specialist. (*Id.* at 20 (explaining that a neurology consultation was unnecessary), 24 (concluding that neither specialty consultation nor additional imaging was necessary), 27 (stating that there was "no medical indication" that Bakambia needed to see a heart or brain specialist).)

Bakambia makes several factual objections, but even if accepted as true, none of these arguments render Bakambia likely to succeed on the merits. First, Bakambia objects to the R&R's quotation of a physician assistant's report. (Obj. at 1–2; R&R at 17.) Bakambia claims that, contrary to the PA's statement, he showed no improvement after taking amitriptyline. (Obj. at 1–2.) Second, in response to the R&R's statement that it was unclear whether someone in the psychology department told Bakambia to stop taking nortriptyline, (R&R at 17), Bakambia explains that he stopped taking the medication because it was causing side effects, and no one answered the kite he sent complaining of the side effects. (Obj. at 2–3.) Third, Bakambia explains that he stopped taking Topamax because Health Services once gave him the wrong medication and he suffered side effects. (*Id.* at 3–4.) Fourth, Bakambia concedes that he gave informed consent to being treated with Topamax but argues that he did not consent to being given the wrong medication. (*Id.* at 4–5.)

Even if Bakambia's factual corrections are true, he still does not have a viable Eighth Amendment claim. There is still no evidence in the record showing that the Defendants were deliberately indifferent to Bakambia's medical needs. Bakambia has not shown that any mistake he alleges constituted any other than just that—mistakes. *See Est. of Rosenberg ex rel. Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995) (explaining that to prevail on an Eighth Amendment claim, the plaintiff "must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation"). Accordingly, Bakambia is not likely to prevail on the merits.

## II. Irreparable Injury

To obtain a preliminary injunction, Bakambia must also show a threat of irreparable injury. *Gen. Motors Corp. v. Harry Brown's, LLC*, 563 F.3d 312, 318 (8th Cir. 2009) (citations omitted). Irreparable injury, in turn, means that "the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." *S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 778 (8th Cir. 2012) (internal quotation marks and citation omitted). Speculation about future harm cannot support a preliminary injunction. *MPAY Inc. v. Erie Custom Comput. Applications, Inc.*, 970 F.3d 1010, 1020 (8th Cir. 2020) (citation omitted). Thus, an "uncorroborated claim" of inevitable harm does not satisfy the plaintiff's burden. *Id.* (citation omitted).

Bakambia has not shown a threat of irreparable harm. Bakambia's claims that he will suffer injury absent an injunction are unduly speculative. And again, the record indicates that Bakambia has received treatment for his headaches and other medical complaints. (ECF No. 77 at 1–2, 19–20, 22–24, 27, 30–32.) Courts have concluded that when a prisoner has been examined and treated for his medical conditions, the prisoner's unsupported claim that failing to receive the specific treatment he requests would result in irreparable harm does not support a preliminary injunction. *E.g., Wheatley v. Smith*, No. 12-CV-880 (DWF/AJB), 2012 WL 5930665, at *2 (D. Minn. Oct. 25, 2012), *report and recommendation adopted*, 2012 WL 5931544 (D. Minn. Nov. 27, 2012); *Edwards v. Sparks*, No. 4:13-CV-93-TJS, 2014 WL 11320976, at *3 (S.D. Iowa Feb. 12, 2014); *Greywind v. Podrebarac*, 731 F. Supp. 2d 931, 934–35 (D.N.D. 2010).

### III. Balance of the Harms

In balancing the harms, the Court weighs the threat of harm the movant would face absent an injunction against the harm the non-movant would incur if the Court does not issue an injunction. *Pottgen v. Mo. State High Sch. Activities Ass'n*, 40 F.3d 926, 928 (8th Cir. 1994). As explained above, Bakambia has not established that he faces a threat of irreparable harm absent an injunction. On the other hand, if the Court issues an injunction, the Defendants would have to arrange for Bakambia to see a brain specialist, which would require the Defendants to expend time and resources. This factor favors neither side.

## IV. Public Interest

Bakambia has identified no public interest served by granting his injunction. On the other hand, the public has an interest in the orderly administration of prisons, and for this reason, courts must exercise judicial restraint when "'dealing with the complex and intractable problems of prison administration.'" *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995) (citation omitted). This factor favors denying Bakambia's motion.

## CONCLUSION

Based on the foregoing and on all the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. Bakambia's objection (ECF No. 174) is OVERRULED;

2. The Report and Recommendation (ECF No. 142) is ACCEPTED; and

3. Bakambia's Motion for Emergency Injunction (ECF No. 46) is DENIED.

Dated: June 2, 2021

BY THE COURT:

s/Nancy E. Brasel
Nancy E. Brasel
United States District Judge