**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

MARC AMOURI BAKAMBIA,                              No. 20-cv-1434 (NEB/KMM)

     Plaintiff,

v.                                                                    **ORDER**

PAUL SCHNELL, et al.,

     Defendants.

This matter is before the Court regarding several nondispositive matters raised by the

Plaintiff, Marc Amouri Bakambia. Based on the Court's review of Mr. Bakambia's filings, the

responsive documents filed by the Defendants, and the entire record in this proceeding, the

Court enters the following Order.[1]

1.      **The Blood Draw: Letter to Magistrate Judge (May 20, 2021) [ECF No. 229]; Plaintiff's Declaration [ECF No. 230]; Plaintiff's Declaration [ECF No. 233]; Plaintiff's Declaration [ECF No. 244].**

Mr. Bakambia states that a blood draw from his left arm was performed poorly and

damaged a vein. He claims that the procedure was intentionally botched to thwart his pursuit

of this lawsuit, and he has filed declarations regarding these accusations. [ECF No. 230, 233,

244]. The issues raised in Mr. Bakambia's letter occurred long after the events addressed in

his Amended Complaint. [ECF No. 117 (Am. Compl.); ECF No. 206 (April 26, 2021 Order

explaining that the pleading at ECF No. 117 is the operative amended complaint)]. The

---

[1]      Although Mr. Bakambia has filed numerous documents, the concerns he raises
are sometimes repeated in multiple filings. In those cases, the Court has endeavored
to organize its analysis by subject rather than solely by docket entry.

Court has not granted leave to supplement the Amended Complaint with any such claims and will not address these issues further based on Mr. Bakambia's letter and declarations.

**2.      Motion for Leave to Conduct Depositions [ECF No. 237]**.

On May 28, 2021, Mr. Bakambia filed a motion seeking leave to conduct a written or oral deposition of Health Partners Emergency Room Dr. Jennifer Boklewski. Mr. Bakambia states that he was treated by Dr. Boklewski at the ER after he lost consciousness on November 6, 2019, and during her examination regarding the cause of his condition, he alleges that "she was informed by someone in the prison that I was under dosing of Antiepileptic and Sedative Hypnotic drugs and Proprianic Acid Derivatives." Mr. Bakambia has alleged throughout this litigation that he lost consciousness on November 6, 2019 because he received neuroleptic medication three weeks before, on October 15th. In the Scheduling Order, the Court required any party seeking to conduct a deposition to demonstrate who the party seeks to depose, explain why the deposition would be helpful to the preparation of the party's case, and briefly describe why the party believes the deposition is proportional to the needs of the case. [ECF No. 136 at 1–2]. The Court finds that Mr. Bakambia has failed to adequately explain what he expects to learn from any deposition of Dr. Boklewski or why he believes it would be proportional to the needs of the case. His conclusory assertion that that the deposition is relevant and proportional is insufficient. The motion is denied.

**3.      Plaintiff's Motion for an Order to Alter Payment for Court Fees & Transfer Any Excess to the Plaintiff's Appropriate Case [ECF No. 245].**

Mr. Bakambia asserts that too many of his funds have been directed toward the installment payments for the filing fee in another case he has pending in this District, Case

No. 20-cv-1433. He asks that any overpayment from that other case be transferred to the balance in this one, and that the institution where he is confined, the Minnesota Correctional Facility in Stillwater, be required to properly direct any future deductions from his prison trust account to this case. Though Mr. Bakambia is justifiably concerned about any overpayment of filing fees, his motion is denied as moot. Between Mr. Bakambia's two cases (Case No. 20-cv-1433, and this case), he has paid a total of $545.79. Of that amount, the Court's Finance Department has confirmed that $350 has been applied to Case No. 20-cv-1433, and the remaining $195.79 has been applied to this case. Thus, although the docket entries in Case No. 20-cv-1433 indicate receipts of more than $350, any amount over the $350 filing fee received in that case has already been applied across Mr. Bakambia's two PLRA cases. Therefore, the issue raised by Mr. Bakambia is moot and this motion is denied. If, for some reason, it appears that Mr. Bakambia has been charged more than the required filing fee for these two cases, he may raise this issue at that time.

### 4.     Plaintiff's Motion to Stay Proceedings [ECF No. 251].

On June 14, 2021, Defendants Louis Shicker, M.D., Darryl Robert Quiram, M.D., and Brent Plackner, P.A., referred to collectively throughout this litigation as "the Centurion Defendants," filed a motion for summary judgment. [ECF No. 240]. This filing was almost two months before the close of discovery and six months before the deadline for dispositive motions. [ECF No. 136]. On June 23rd, Mr. Bakambia filed a motion asking United States

District Judge Nancy E. Brasel[2] to defer ruling on the motion for summary judgment until he received answers to all his interrogatories and requests for admissions, and until he conducts a deposition. [ECF No. 251]. He offers several reasons why the Court should grant such relief, which are addressed in turn below. After considering all of Mr. Bakambia's arguments and, especially, in light to the current state of these proceedings, the Court denies Mr. Bakambia's motion at this time.

Most critically, the Court denies this request because the passage of time renders it unnecessary. Although two months of discovery remained when Mr. Bakambia first sought to delay consideration of the summary judgment motion, that time has passed and discovery is now concluded. Because Mr. Bakambia had time to not only conduct discovery, but also file numerous motions to compel after the Centurion Defendants' motion was filed, there is no need for further delay.

Mr. Bakambia suggests that a stay should be granted because of the conduct of the Centurion Defendants during this litigation and their failure to file responses to certain of his written submissions. [ECF No. 252 at 2, Part A, & 3–5, Parts C–E]. However, the failure of Centurion to respond to any other motions filed by Mr. Bakambia does not provide a basis to defer consideration of the Centurion Defendants' motion for summary judgment.

Mr. Bakambia also asserts that there are genuine issues of material fact making summary judgment inappropriate because his Amended Complaint lays out those factual

---

[2]     Because Mr. Bakambia is incarcerated, the undersigned Magistrate Judge will address dispositive motions in the first instance by issuing a Report and Recommendation. This includes Centurion Defendants' pending motion for summary judgment,.

disputes. [ECF No. 252 at 3, Part B]. However, in response to a motion for summary judgment, the non-moving party asserting that a fact is in dispute may not rest on the allegations in their pleadings, but must instead point to specific materials in the record, such as discovery responses, or documentary evidence. Fed. R. Civ. P. 56(c)(1)(A). Mr. Bakambia will be given an opportunity to submit such materials and brief his opposition to summary judgment. But his Amended Complaint alone does not achieve that goal.

Mr. Bakambia also points to his request to conduct a deposition of Dr. Boklewski, suggesting it requires delay of the summary-judgment decision. [ECF No. 252 at 5, Part F]. However, the Court denies Mr. Bakambia's request to take Dr. Boklewski's deposition in this Order. Therefore, this deposition does not justify delaying summary judgment.[3].

Finally, Mr. Bakambia suggests that consideration of the motion for summary judgment must be delayed because certain discovery is still outstanding. The Court disagrees. He argues that the Centurion Defendants have not produced "the record of all medical records they've emailed to the Medical Board," and he references the Court's May 25, 2021 Order [ECF No. 231], requiring the Centurion Defendants to provide their responses to the Medical Board regarding his complaint and any documents reflecting statements they made

---

[3]     Mr. Bakambia invokes Rule 56(d) in connection with his request to delay ruling on the summary judgment motion until after he completes Dr. Boklewski's deposition. A party invoking Rule 56(d) must show "'(1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discover, (2) that the facts sough exist, and (3) that these sought-after facts are essential to resist the summary judgment motion.'" *Toben v. Bridgestone Retail Operations, LLC*, 751 F.3d 888, 894 (8th Cir. 2014) (cleaned up). Based on the same reasons that the Court denied Mr. Bakambia's request to conduct the deposition, the Court finds that this standard has not been met. In reaching this conclusion, the Court has reviewed all of Mr. Bakambia's filings regarding this issue, including his unauthorized reply brief and supporting documents. [*See* ECF Nos. 270–273].

to the Board about the care they provided to Mr. Bakambia. [ECF No. 252 at 6–7, Part G]. However, a letter from defense counsel indicates that the Centurion Defendants produced the information required by the May 25th Order, and they have represented that no other responsive information is in their possession. [ECF No. 253-1; ECF No. 260 at 8 n.3].

Similarly, Mr. Bakambia indicates that he served interrogatories and requests for admissions on the Centurion Defendants on June 15th and June 16th, but had not yet received a response. In a July 1, 2021 response to Mr. Bakambia's motion, counsel for the Centurion Defendants represented that they were served with these discovery requests and their responses were due on July 12, 2021, and they were "preparing written responses that will be served on or before the deadline." [ECF No. 260 at 4 n.2]. It is now October, and Mr. Bakambia has had responses to these discovery requests for a significant period, so they do not provide a basis for further delay.

In sum, the Court finds that given the fact that discovery is now concluded, there is no reason to further delay consideration of Centurion's summary judgment motion. The Court will issue a briefing Order that allows Mr. Bakambia time to respond.

### 5.   Plaintiff's Motion to Unseal [ECF No. 251].

Mr. Bakambia suggests that the Centurion Defendants have somehow acted improperly because the memorandum supporting their motion for summary judgment was filed under seal. The claims in this case relate to Mr. Bakambia's medical conditions and the record will necessarily involve sensitive information about Mr. Bakambia that he very well may not wish to make publicly available. The Court finds no fault with the Centurion Defendants' decision to proceed cautiously and submit such information under seal.

6

6.      **Plaintiff's Fourth Motion to Compel [ECF No. 255].**

On June 30, 2021, Mr. Bakambia filed a motion to compel discovery. First,

Mr. Bakambia again alleges that the Centurion Defendants failed to comply with the Court's

May 25, 2021 Order requiring them to produce certain documents related to his complaints

to the Medical Board. Mr. Bakambia complains that the Centurion Defendants did not

provide copies of medical records submitted to the Medical Board, but defense counsel

represents that neither Mr. Plackner's nor Dr. Quiram's response to plaintiff's Board

complaint included any medical records. Because there is nothing more for the Centurion

Defendants to produce with respect to the Court's Order, Mr. Bakambia has not

demonstrated noncompliance and this motion is denied.

Second, Mr. Bakambia argues that the Centurion Defendants did not provide

adequate information regarding Dr. Quiram's employment history. However, consistent with

the representations of defense counsel in their response to this motion, the Court finds that

the Centurion Defendants have complied with the Court's May 25th Order requiring

supplementation of their discovery responses on this point. In particular, the Centurion

Defendants have clarified that Dr. Quiram's military service did not involve work as a

cardiologist. This request is denied.

Third, Mr. Bakambia asserts that the DOC Defendants failed to comply with the

Court's May 25th Order by refusing to produce audio recordings of his calls with attorney

Steven Cooper. The DOC Defendants informed Mr. Bakambia that no such recordings

exist. Notwithstanding Mr. Bakambia's assertion to the contrary, the Court has made no

finding that such recordings exist. In addition, Mr. Bakambia has not shown that the DOC

Defendants failed to comply with the May 25th Order regarding these calls in any other respect. This motion is denied.

Fourth, Mr. Bakambia asserts that the DOC Defendants refused to provide his entire case management file under supervision of his case worker, Rebecca Erickson. He claims that the DOC Defendants removed notes from this file, indicating that there are only some notes with his case worker Theresa Wohlhaefer. In the May 25th Order, the Court required the DOC Defendants to produce Mr. Bakambia's case management file while under supervision of Case Worker Erickson. [ECF No. 231 at 8]. The DOC Defendants produced the case management file while he was under the supervision of Ms. Erickson in response to the Court's Order, explaining to Mr. Bakambia where those documents could be located by referencing the Bates numbers applied. [ECF No. 257-2 at 1]. Further, the record shows that the DOC Defendants produced more than was required by the Court's Order. [ECF No. 257-2 at 1, 6–10]. To avoid further disputes and in response to Mr. Bakambia's requests for additional information, the DOC Defendants produced his entire case management file, along with several other documents that he asked them to provide. [ECF No. 257-2 at 22; ECF No. 257-3 at 1]. The Court can find no evidence in the record to support the assertion that notes relating to Ms. Wohlhaefer were removed from the production, and the DOC Defendants have represented that the notes Mr. Bakambia references simply do not exist. In light of the DOC Defendants' production and the entire record pertaining to this issue, this motion is denied.

Fifth, Mr. Bakambia asks the Court to reconsider its prior decision that certain surveillance videos need not be produced by the DOC Defendants. The Court denied

Mr. Bakambia's motion to compel surveillance video footage in its May 25th Order, and Mr. Bakambia has provided no compelling reason to revisit those conclusions. *See* D. Minn. LR 7.1(j) (authorizing motions to reconsider only where a party shows "compelling circumstances").

Sixth, Mr. Bakambia asks the Court to order the DOC Defendants to produce documents he requested through data practices requests under the Minnesota Government Data Practices Act ("MGDPA"). Specifically, Mr. Bakambia asks the Court to require the DOC Defendants to produce Defendant Monica Arons's response to a complaint he made to the Minnesota Board of Nursing along with any supportive documentation she supplied the Board. In addition, Mr. Bakambia seeks an order compelling the DOC Defendants to provide information he sought via MGDPA requests for medical records, mail receipts, reports, and surveillance videos. Further, Mr. Bakambia asks the Court to require the DOC Defendants to produce an audio recording of a phone call between him and his sister on June 27, 2021. Under Minn. Stat. § 13.08, subd. 4, a person who has made a request for information under the MGDPA may bring an action to compel compliance with the state statute by a responsible Minnesota agency. Here, there is no claim in the Amended Complaint seeking to compel compliance with the MGDPA, and as a result, these issues are not properly before the Court.[4] Even if they were, Mr. Bakambia makes no showing that the MGDPA requests at issue are the same as any request he served pursuant to the Federal

---

[4]    The DOC Defendants state that MCF-Stillwater appropriately responded to Mr. Bakambia's MGDPA requests, but because these issues are not properly before the Court, the undersigned expresses no opinion with regard to the DOC Defendants' assertion that the prison complied with the state law.

Rules of Civil Procedure and in compliance with the scheduling order. Therefore, the Court cannot find that an Order compelling their production is appropriate. Fed. R. Civ. P. 37(a)(3) (allowing an order compelling discovery responses where a party fails to respond to proper discovery requests under the Rules). This motion is denied.

Seventh, Mr. Bakambia alleges that the DOC has interfered with his access to court in this proceeding, his attempt to contact the embassy for the Democratic Republic of the Congo, and his phone calls with his sister. Because none of these issues bears any relationship to the conduct at issue in the Amended Complaint, the Court denies this motion.

Finally, Mr. Bakambia has requested an expansion of the limit on interrogatories and requests for admission he may serve in this case. The Court finds that Mr. Bakambia has failed to show good cause to support his proposed modification of the discovery limits established in the scheduling order. Fed. R. Civ. P. 16(b)(4).

### 7.    Plaintiff's 5th Motion for an Order Compelling Discovery [ECF No. 286].

On August 16, 2021, Mr. Bakambia filed a motion to compel discovery from the Defendants raising many disputes. The Court has carefully reviewed Mr. Bakambia's submissions, and done so in recognition of his status as a *pro se* litigant. Based on that review, the motion is denied in all respects, except with respect to Mr. Bakambia's request that the DOC Defendants be required to provide a substantive response to a contention interrogatory regarding the defense of unclean hands.

### *Centurion Defendants' Interrogatories*

First, Mr. Bakambia asserts that the signatures of the Centurion Defendants verifying their answers to plaintiff's June 8, 2021 interrogatories are improper. He states that the signature pages were served separately from the answers themselves, and the pagination of the answers does not match the pagination of the signature pages. Mr. Bakambia claims that this makes the Centurion Defendants' answers evasive because one cannot tell what the signing person is actually verifying. Having reviewed the signature pages [ECF No. 288-1 at 27–32], and the Centurion Defendants' representation that Dr. Quiram will satisfy the requirement that his answers be provided under oath [ECF No. 301 at 3], the Court finds no flaw with the manner in which the answers were verified and will not grant any relief related to this issue.[5]

Second, Mr. Bakambia argues that Dr. Quiram's response to Interrogatory No. 3 is "totally conflicting with his response he made to Plaintiff's complaint to [the] Medical Board regarding the length of EACH appointment with Plaintiff." [ECF No. 287 at 5–6]. Having reviewed the answer to the interrogatory and the letter to the Medical Board, there is no apparent inconsistency between the responses. But even if the documents were contradictory, this would not be a basis on which to compel any supplementation of the interrogatory response. Rather, any inconsistency that Mr. Bakambia perceives would be the

---

[5]     It is unclear why Mr. Bakambia does not have a page number 24 for the Centurion Defendants' responses. However, defense counsel's cover letter indicates that the signature pages correspond to the Centurion Defendants' responses to the June 8, 2021 interrogatories. Therefore, there is nothing evasive about the method of verification.

basis for cross-examination at trial or argument to a jury, should the case proceed that far. The motion is denied on this issue.

Third, Mr. Bakambia takes issue with Dr. Quiram's response to Interrogatory No. 8, which asks for Dr. Quiram's expert opinion regarding the safety of "gaps" on the railings of "each tier." Mr. Bakambia's memorandum suggests that this interrogatory is related to his request, during a medical appointment with Dr. Quiram, for an order that he be allowed to avoid using stairs. He argues that Dr. Quiram "denied Plaintiff any accommodations, suppressing Plaintiff's complaint of pain," and that the Centurion Defendants' objections are frivolous. [ECF No. 287 at 6]. The Court finds that the objections to this interrogatory are appropriate. Dr. Quiram's opinions regarding the safety of any railings gaps in the prison has limited, if any, bearing on whether he was deliberately indifferent to Mr. Bakambia's medical needs. Moreover, Dr. Quiram has not been identified as an expert witness to offer opinions regarding the safety or design of any prison facility. The motion is denied with respect to this interrogatory.

Fourth, Mr. Bakambia asks the Court to compel an answer to Interrogatory No. 10, arguing that the Centurion Defendants improperly responded with an objection that the question should have been directed to another party. This interrogatory quotes a DOC policy regarding detoxification treatment for prisoners who have ingested, among other things, sedative hypnotic drugs, and then asks the Centurion Defendants to state why this policy was not followed given that Mr. Bakambia was allegedly underdosing sedative hypnotic drugs when he lost consciousness and fell. Mr. Bakambia argues that this interrogatory and the Centurion Defendants' response is relevant to his deliberate

12

indifference claim regarding the Defendants' alleged administration of a neuroleptic drug without his informed consent. [ECF No. 287 at 7]. The Court denies Mr. Bakambia's motion for a supplemental answer to this interrogatory. In addition to objecting that the interrogatory should have been directed to another party (the DOC), the Centurion Defendants also state that they do not possess information regarding why this policy was or was not followed. Given that the request concerns a DOC policy and not a policy of any Centurion Defendant, the Court finds these objections are appropriate.

Fifth, Mr. Bakambia asks the Court to compel a further response to Interrogatory No. 18. This interrogatory asks the Centurion Defendants to state all the abnormalities found in a urinalysis performed on September 22, 2020, what the references in the UA report stand for, and why these abnormalities were detected without being documented in his medical records. The Centurion Defendants objected to the interrogatory on several grounds, referred Mr. Bakambia to his medical records, and stated that Defendant Plackner ordered the UA to determine how much water Mr. Bakambia was drinking. In addition, they stated that the results of the UA were not abnormal. Mr. Bakambia argues that this answer is nonresponsive and evasive and asks the Court to require the Centurion Defendants to properly answer the request. The motion is denied in this respect. The Centurion Defendants provided a substantive answer that is neither nonresponsive nor evasive. Mr. Bakambia's allegation that the UA results were abnormal does not mean that the Centurion Defendants failed to properly respond to the interrogatory.

Sixth, Mr. Bakambia seeks a more substantive answer to Interrogatory No. 21. This interrogatory quotes a passage from the Merck Manual of Medical Information regarding

13

neutropenia, states that Defendant Plackner diagnosed Plaintiff with "mild leukopenia, likely related to Bell syndrome, which is benign ethnic neutropenia," and then asks "[w]hat is the cause of plaintiff's neutropenia[?]" The Centurion Defendants objected to this interrogatory as irrelevant and improperly calling for an expert opinion, among other grounds. The Centurion Defendants directed Mr. Bakambia to a medical record showing a lowered neutrophil count and mildly elevated lymphocyte count, results from a blood test, and Defendant Plackner's assessment. Mr. Bakambia argues that this answer is evasive and unresponsive because he still suffers from neutropenia and the cause is unknown. The motion is denied with respect to this interrogatory. The Centurion Defendants' answer fairly responds to the substance of the interrogatory and provides information about the basis for Defendant Plackner's diagnosis.[6]

Finally, in his memorandum in support of this motion, Mr. Bakambia states that he made objections to the Centurion Defendants' answers to additional interrogatories that are not discussed above. Mr. Bakambia then references Exhibit B to his declaration in support of the motion to compel, which is a copy of a communication he sent to counsel for the Centurion Defendants raising issues with their interrogatory answers. [ECF No. 287 at 5 (referring to Interrogatories 1–6, 8–16, and 18–25 and citing ECF No. 288-1 at 9–18).]

---

[6]    Although the Centurion Defendants argued that Interrogatory No. 21 was irrelevant because "there is no allegation in this case about treatment related to neutropenia," [ECF No. 301 at 9], the Court disagrees. Mr. Bakambia's Amended Complaint alleges that neutropenia was among the "diseases" he suffered as a result of "Defendants actions." [ECF No. 117 ¶ 137]. Given that allegation, the Court concludes that a question about the cause of Mr. Bakambia's neutropenia is relevant, even if the Amended Complaint does not allege that any treatment he received for neutropenia was constitutionally inadequate. Nevertheless, the Centurion Defendants' answer to this interrogatory was appropriate, as described above.

Ordinarily, issues that are raised in a deficiency letter to opposing counsel but not briefed by a party seeking to compel discovery are not properly before the Court simply because the deficiency letter was attached as an exhibit to a declaration. Here, in light of Mr. Bakambia's *pro se* status, the Court has reviewed his deficiency letter and the Centurion Defendants' answers to the relevant interrogatories, and finds that no order compelling discovery is required based on the record before the Court.[7]

### Centurion Defendants' Responses to Requests for Admissions

In addition to the motion to compel interrogatory answers, Mr. Bakambia asks the Court to compel supplemental (or different) answers to several Requests for Admissions ("RFAs") that he served on the Centurion Defendants. At issue are RFA Nos. 1, 4, 8, 12, 21, 22, 23, 24, and 25. Federal Rule of Civil Procedure 36 provides that a party may ask another party to admit the truth of any matters within the proper scope of discovery, including "facts, the application of law to fact, or opinions about either; and … the genuineness of any described documents." Fed. R. Civ. P. 36(a)(1). "[T]he "purpose of Rule 36 is to remove uncontested issues and to prevent delay." *Am. Petro, Inc. v. Shurtleff*, 159 F.R.D. 35, 38 (D. Minn. 1994) (citation omitted); *see also Sobolik, Tr. for Sobolik v. Briggs & Stratton Corp.*, No. CV 09-1785 (JRT/RLE), 2010 WL 11640189, at *3 (D. Minn. July 2, 2010). ("The quintessential

---

[7]    Though the Court has considered these issues, it has disregarded Mr. Bakambia's reply memorandum in support of the motion to compel. Local Rule 7.1 prohibits a party from filing a reply memorandum in support of a nondispositive motion unless the party receives permission from the court. D. Minn. LR 7.1(b)(3). Mr. Bakambia has repeatedly violated this Local Rule throughout this litigation, submitting memoranda and declarations that were neither authorized by the Local Rules, nor permitted by the Court. [*E.g.*, ECF Nos. 209, 215, 227, 270, 277, 280, 306, 307]; *See also* D. Minn. LR 7.1(i) (prohibiting the filing any memorandum of law not authorized by Local Rule 7.1).

function of Requests for Admissions is to allow the narrowing of issues, to permit facilitation in presenting cases to the factfinder and, at a minimum, to provide notification as to those facts, or opinions, that remain in dispute.").

In responding to a RFA, a party may make specific objections, admit or deny the matter requested, make a qualified admission or partial denial explaining the basis for any qualification, or assert that it lacks knowledge sufficient to admit or deny the request following a reasonable inquiry. Fed. R. Civ. P. 36(a)(4). A requesting party may move to determine the sufficiency of an answer or objection. Fed. R. Civ. P. 36(a)(6). Courts addressing such motions do not compel a different answer to a RFA simply because the requesting party "is unsatisfied with [the responding party's] denials." *Marvin Lumber & Cedar Co. v. PPG Indus., Inc.*, 168 F.R.D. 641, 643 n.1 (D. Minn. 1996).

The motion to compel is denied with respect to Mr. Bakambia's requests for admissions from the Centurion Defendants. In Mr. Bakambia's memorandum, he essentially argues that the Centurion Defendants improperly denied matters asserted in many of his requests because, in his view, the evidence does not support their position. A disagreement with an answering party's refusal to admit certain matters and an argument that the record shows otherwise is generally not a basis to require the answering party to provide a different answer. *Lakehead Pipe Line Co. v. Am. Home Assur. Co.*, 177 F.R.D. 454, 458 (D. Minn. 1997) ("Rule 36(a) does not authorize a Court to prospectively render determinations concerning the accuracy of a denial to a Request for Admission, or to order that the subject matter of the request be admitted because the opposing party's unequivocal denial is asserted to be unsupported by the evidence."). The Court will not require the Centurion Defendants to

16

change any of their responses to the RFAs based on Mr. Bakambia's argument that denials were frivolous or contrary to other evidence.

The Court finds that the responses to each RFA discussed by Mr. Bakambia comply with the requirements of Rule 36, including the Centurion Defendants' partial admissions, qualifications of a response where necessary, and statements that they conducted a reasonable inquiry but could not in good faith admit or deny the request based on information available to them. Having reviewed each of the RFAs at issue, the Court also notes that it is not clear in every request precisely what Mr. Bakambia was asking the Centurion Defendants to admit. [ECF No. 288-1 at 60–75]. For example, RFA No. 1 begins with a lengthy quotation from a document followed by a statement and, finally, an assertion that a particular conclusion could be drawn. [ECF No. 288-1 at 60–61]. The Centurion Defendants admitted that a medical record contained the quoted language and stated that they made a reasonable inquiry, but lacked information that would allow them to admit or deny the remaining portions of the requests. They properly admitted portions of other requests, lodged specific objections, and similarly stated lack of knowledge sufficient to admit or deny other parts of the remaining requests. These are appropriate responses. The Centurion Defendants' responses are neither manipulative nor evasive as Mr. Bakambia contends.

Finally, Mr. Bakambia objects to the Centurion Defendants' assertion in many of their answers to his RFAs, that his medical records speak for themselves. The caselaw does not provide a binding rule that prohibits an assertion that documents "speak for themselves"

in response to an RFA.[8] Given the lack of clarity and argumentative nature of

Mr. Bakambia's RFAs, the Court cannot conclude on this record that the Centurion

Defendants' statement that the documents speak for themselves was inappropriate.

Mr. Bakambia has been adequately notified that the Centurion Defendants disagree with his

interpretation of the medical records at issue.

### *DOC Defendants' Interrogatory Responses*

Mr. Bakambia moves to compel the DOC Defendants "to properly respond to …

interrogatories" they originally answered on July 19, 2021, and responded to through

amended answers on August 2, 2021. [ECF No. 287 at 1–2, 12]. First, Mr. Bakambia raises

two issues with the DOC Defendants' response to Interrogatory No. 8, which reads as

follows:

> State the License number of Defendant Monica Arons, RN-S; Lynn Noll;
> Kathy Reid; Lori Lewis; and Tammy Lisowy, including their background
> informations, their educations, training and any sanctions or suspensions to
> their Licenses.

[ECF No. 285 at 3]. In their original response, the DOC Defendants raised certain

objections, but provided the license number for each identified individual. They also stated:

"DOC Defendants are not aware of any suspensions or other sanctions taken by a state

---

[8]     *Compare United States Sec. and Exchange Comm'n v. Mack*, No. 19-cv-918 (PAM/ECW),
2020 WL 6255703, at *3 (D. Minn. Oct. 23, 2020) (citing cases for the proposition that a
statement that a document speaks for itself is not a valid objection where an RFA asks the
party to admit its authenticity), *with Lakehead Pipe Line Co. v. Am. Home Assur. Co.*, 177 F.R.D.
454, 457–58 (D. Minn. 1997) (finding that qualified responses indicating documents speak
for themselves were appropriate where the responses "effectuate[d] the purposes of Rule
36" by placing the defendants "on notice that their interpretation of a given document is
inconsistent with the Plaintiffs' construction").

licensing board with respect to these individuals' respective professional licenses." And the DOC Defendants referred Mr. Bakambia to attached documents to find information about the named individuals' employment backgrounds and training. [ECF No. 285 at 87–88]. Mr. Bakambia first argues that the DOC Defendants responded improperly to this request because the documents they referenced were not, in fact, attached to the response. [ECF No. 287 at 12–13; ECF No. 285 at 60–61]. The DOC Defendants served an amended answer to this interrogatory on July 27, 2021, acknowledged that the documents referenced had not been attached to the response, and remedied that problem. [ECF No. 285 at 2–46]. Based on this history, the Court finds that there is no basis to compel further discovery with respect to this aspect of Interrogatory No. 8.

Mr. Bakambia next asserts that the DOC Defendants' answer to Interrogatory No. 8 is deficient because it contains an "evasive" answer. Specifically, the DOC Defendants stated that they "are not aware of any suspensions or other sanctions taken by a State Licensing Board with respect to these individuals' respective professional licenses." [ECF No. 287 at 16]. In response to interrogatories, parties lacking knowledge of a specific fact may, in good faith, state that they are not aware.[9] There has been no showing that the DOC Defendants' statement that they are not aware of any sanctions or suspensions was made in bad faith. The Court finds this aspect of the DOC Defendants' response to be appropriate and will not require an amended answer to Interrogatory No. 8.

---

[9]     *E.g.*, *Hardy v. Davis*, No. 2:13-CV-0726 JAM DB, 2017 WL 445723, at *1 (E.D. Cal. Feb. 1, 2017) ("While some of these responses expressly stated that defendants could not remember or were not aware of certain facts, such answers—when delivered in good faith— are completely appropriate if defendants lack knowledge.").

Second, Mr. Bakambia argues that although the DOC Defendants served an amended answer to Interrogatory No. 8, they did not do so for Interrogatory No. 7, which seeks background employment and training information regarding non-party Andrea Long, a DOC employee who has worked as a corrections officer and therapist at several Minnesota prisons. DOC Defendants' counsel provided additional information in response to Interrogatory No. 7 in a letter to the Plaintiff. Defense counsel stated: "the specific facilities at which Ms. Long worked was not specifically requested, nor is that information relevant to the claims asserted in the amended complaint." Despite those observations, defense counsel informally provided substantive information about those facilities in the letter. [ECF No. 285 at 2]. Mr. Bakambia asks that the DOC Defendants be ordered to amend their response to Interrogatory No. 7 under oath. He argues that medical records showing he was treated by Ms. Long on January 23, 2019 and by Ms. Sheeran on May 29, 2019 are falsified, and knowing the facilities at which Ms. Long worked, and when she worked at those locations, will help him establish that she could not have provided him care as his medical records reflect. [ECF No. 287 at 13–14]. The DOC Defendants' objections to Interrogatory No. 7—that the requested information is not relevant and that Ms. Long is not a party— were appropriate. Were Mr. Bakambia to establish that these records were falsified by obtaining information about every facility at which she worked and showing that she could not have provided him care, it would not help him establish that any of the DOC Defendants, against whom he has filed his complaint, violated his constitutional rights. Defense counsel also properly observed that the interrogatory did not request information

20

about the specific facilities at which Ms. Long worked. The motion to compel is denied as to Interrogatory No. 7.

Third, Mr. Bakambia contends that the DOC Defendants' answer to Interrogatory No. 5 was improper because it did not include information about Defendant Sarah Hard under her maiden name. Mr. Bakambia argues that such information "is relevant and should be produced." [ECF No. 287 at 14]. Despite using only Ms. Hard's married name, the DOC Defendants' answer to this interrogatory does not suggest that the information provided was limited to the period after her marriage. There is no indication the answer provided is incomplete or that the DOC Defendants have withheld any information, and the DOC's use of Ms. Hard's married name alone is not improper. The motion to compel is denied in this respect.

Fourth, Mr. Bakambia raises issues with the DOC Defendants' answers to Interrogatory No. 6, which asked for Andrea Long's license number and the license number for another non-party, Samantha Sheeran. [ECF No. 287 at 15]. The DOC Defendants objected to this interrogatory as irrelevant and because Ms. Long is not a party, but they nonetheless provided substantive information in response to this request. [ECF No. 285 at 86]. Despite Mr. Bakambia's suggestion that the DOC Defendants should have provided more information about the mental health provider who supervises Ms. Long, that information was not requested in Interrogatory No. 6. As a result, the DOC Defendants did not fail to respond to the request. Fed. R. Civ. P. 37(a)(3)(B)(iii) (permitting a motion to compel discover if "a party fails to answer an interrogatory submitted under Rule 33"). The motion is denied with respect to Interrogatory No. 6.

Fifth, Mr. Bakambia argues that the DOC Defendants' answer to Interrogatory No. 16 is "frivolous." In their response to this interrogatory, the DOC Defendants referred to his medical records, but Mr. Bakambia argues that other evidence in the record contradicts the idea that "Centurion Defendant Plackner conducted a follow up with Plaintiff after he lost conscious ness on 1/10/2020…." [ECF No. 287 at 16]. The Court cannot discern a specific request in this portion of Mr. Bakambia's motion, but to the extent he asks the Court to find that the answer is frivolous because he disagrees with it, the Court declines to do so and his motion is denied in this respect.

Sixth, Mr. Bakambia moves to compel discovery with respect to Interrogatory No. 17. There, he asks the DOC Defendants to explain the process by which an inmate's phone pin may be changed, and how his own pin was changed on May 7, 2019 and August 5, 2019. In addition, he sought other detailed information about those changes. In response the DOC Defendants raised objections to the interrogatory, but stated that an inmate's phone pin may be changed at the inmate's expense when he submits a signed voucher. Further, they explained that Mr. Bakambia submitted such a voucher on May 5, 2019, identified the officer who verified it, and referred to documents reflecting the voucher. With respect to the August 2019 change to Mr. Bakambia's phone pin, the DOC Defendants stated that it was not made at his request and "was done inadvertently," leading to a refund of the costs. [ECF No. 285 at 92]. In support of his motion to compel, Mr. Bakambia argues that: (1) this answer is frivolous; (2) he asked the DOC Defendants to provide a transaction number for the refund, but did not receive it; (3) his monthly statements for August and September 2019 do not show a refund; and (4) DOC Defendants failed to provide details

about all the steps taken in their investigation regarding the pin change. He asks the Court to compel the defendants to "produce the transaction number for the refund of the phone pin change in August 2019, to state the steps they took to investigate the pin change, who they contacted and what information that individual provided, then finally Defendant[s] are required to amend their answer to Plaintiff's operative complaint." [ECF No. 287 at 17–18]. The Court finds that Mr. Bakambia is not entitled to an order compelling further discovery with respect to Interrogatory No. 17. Simply put, the information Mr. Bakambia now moves to compel was not requested in the interrogatory.

Seventh, Mr. Bakambia moves to compel an answer to Interrogatory No. 22, a contention interrogatory seeking the basis for the DOC Defendants' assertion of unclean hands as an affirmative defense. In response the DOC Defendants raised several objections and stated:

> DOC Defendants asserted this defense to preserve it and, given that discovery is ongoing, cannot say at this point how or whether they intend to pursue this defense. Discovery is continuing and DOC Defendants will supplement this answer as necessary.

[ECF No. 285 at 94–95]. Mr. Bakambia contends that this response amounts to "game playing" and states that "the Court should order DOC Defendants to properly answer … Interrogatory No. 22…."[10] [ECF No. 287 at 18–19]. The Court finds that the DOC

---

[10]    In this portion of his brief, Mr. Bakambia contends that the Court should compel answers to Interrogatory Nos. 1–3, 9–15, 18–21, and 23–25. He refers the Court to the issues he raised with the DOC Defendants' responses to these requests prior to filing his motion to compel. [ECF No. 287 at 19]. However, Mr. Bakambia makes no specific argument regarding these requests in his memorandum and the Court will not construct an argument on his behalf. Accordingly, the Court does not further address these interrogatories.

Defendants' response to this request was appropriate at the time, but because discovery has now ended, a supplemental response is required. Contention interrogatories are questions asking a party to explain the facts known to them, if any, that support a claim or defense. They serve the purpose of ensuring that the requesting party is aware of the basis on which a claim or defense is made so that the requesting party is able to adequately prepare for dispositive motion practice and any trial that may occur. Given their purpose, it is often appropriate for the answering party to wait until the end of discovery to provide a substantive answer to a contention interrogatory that is complete. *See, e.g.*, *Shqeirat v. U.S. Airways Gr., Inc.*, Civil No. 07-1513 (ADM/AJB), 2008 WL 4232018, at *4 (D. Minn. Sept. 9, 2008) (explaining the purpose of contention interrogatories and that the court may order that the interrogatory need not be answered until discovery is complete or until a pretrial conference, or some other time). If, at the close of discovery, an answering party has no evidence to support a claim or defense that is the subject of a contention interrogatory, the answering party may supplement its answer to clarify that the claim or defense lacks a factual basis, thereby removing it as an issue in the litigation. Here, discovery closed on August 2, 2021. To the extent the DOC Defendants have not supplemented their response already, they are required to do so by this Order. **Accordingly, this aspect of the motion to compel is granted**.

### *DOC Defendants' Responses to Requests for Admissions*

Mr. Bakambia seeks an order compelling the DOC Defendants to provide answers to several RFAs. In his memorandum, he specifically argues that the answers to RFA 2, 4, 9, 10, and 24. Having reviewed these requests and the DOC Defendants' responses, the Court

finds that Mr. Bakambia does not demonstrate that the responses failed to comply with Federal Rule of Civil Procedure 36. The DOC Defendants admitted the authenticity of certain documents referenced by Mr. Bakambia in several of these requests, made appropriate denials of other matters he asked them to admit, and provided properly qualified responses. [ECF No. 285 at 133–48]. The fact that the DOC Defendants stated that certain documents "appear to be" authentic copies does not make their response improper. Through such answers, Mr. Bakambia has been given notice that the DOC Defendants do not dispute the authenticity of certain records. Mr. Bakambia's disagreement with the DOC Defendants' denials also does not justify an order compelling them the provide a different answer. Instead, Mr. Bakambia has been notified that those matters that have been denied are disputed. The Court denies Mr. Bakambia's motion with respect to these RFAs.

### 8.  Plaintiff's Motion to Reconsider Motion to Appoint Counsel [ECF No. 292].

Mr. Bakambia requests that the Court reconsider its March 2, 2021 Order denying a prior motion for appointment of counsel. In support of this request, Mr. Bakambia emphasizes that he is unable to afford counsel, that the issues in this case are complex, that he has limited access to the law library, and that he has challenges litigating his case due to the ongoing COVID-19 pandemic. The Court's analysis in its March 2, 2021 Order of the relevant factors governing whether to request an attorney to assist Mr. Bakambia with his case has not changed. [ECF No. 137 at 2–3]. For those same reasons, Mr. Bakambia's motion is denied.

## CONCLUSION

For the reasons stated, the Court denies Mr. Bakambia's motions to compel in all respects but one. *See* discussion at p. 23–24, *supra*. The Court has also denied Mr. Bakambia's other motions, including his motion to stay consideration of the Centurion Defendants' summary judgment motion. A separate briefing Order will be issued.

**IT IS SO ORDERED**.

Date: October 7, 2021

 *s/Katherine Menendez*
Katherine Menendez
United States Magistrate Judge
