UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| Marc Amouri Bakambia, | No. 20-cv-1434-NEB-KMM |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Paul Schnell, et al., | |
| Defendants. | |

---

This matter is before the Court on Marc Amouri Bakambia's second motion for preliminary injunctive relief. [ECF No. 313]. Mr. Bakambia seeks the following forms of injunctive relief:

(1) an order requiring the DOC Defendants to deliver legal mail to him on the same day it is received at the prison;
(2) an order requiring the DOC Defendants and Centurion Defendants to show cause why notes from a medical visit have disappeared from Mr. Bakambia's records and why spoliation sanctions should not be imposed;
(3) a declaration that all Defendants in this case have engaged in racketeering activity prohibited by the Racketeering Influenced Corrupt Organization Act ("RICO"), and a finding of civil contempt; and
(4) an order requiring the Defendants to refer Mr. Bakambia to a neurological specialist and a specialist diagnostician for evaluation and proper treatment of his headaches, a specialist referral relating to his neck pain, and a specialist referral for abdominal pain.

[ECF No. 313 at 1–4]. For the reasons below, the Court recommends that Mr. Bakambia's motion be denied.

I. **Factual Background**

Both this Court and the District Court have extensively detailed the factual background of this litigation through numerous reports and recommendations and orders. Given concerns of judicial economy presented, in particular, by Mr. Bakambia's voluminous

1

and repetitive filings in this case, that background will not be repeated at length in this decision. Generally speaking, Mr. Bakambia alleges that the Centurion Defendants and the DOC Defendants have been deliberately indifferent to his serious medical needs given the numerous physical and mental symptoms he has experienced since he was attacked in May 2019 by other inmates at MCF-Rush City. He claims that he should have been referred to a neurological specialist for his headaches, but the Defendants have refused to make such a referral. Further, he asserts that the Defendants have refused to provide him adequate medical treatment for a number of other health conditions and that the DOC Defendants deliberately exposed him to the virus causing COVID-19. Finally, Mr. Bakambia claims that the DOC Defendants have unconstitutionally interfered with his First Amendment right of access to the courts by impeding or preventing communications with one or more attorneys.

### *Medical Referral Request*

With respect to his request for an injunction requiring a referral to various specialists, the Court begins by noting that Mr. Bakambia previously moved for a preliminary injunction requiring a referral to a neurologist, but that motion was denied. After this Court recommended that the earlier motion be denied, on June 2, 2021, the District Court found that Mr. Bakambia failed to show he was likely to prevail on the merits. The District Court specifically noted that he had received treatment for his symptoms on many occasions, that none of his providers had recommended a referral to a neurological specialist, and that he failed to demonstrate any alleged mistake by any Defendant was the result of deliberate disregard of or indifference to his medical needs. The District Court further determined that Mr. Bakambia did not establish a threat of irreparable injury, that the balance of the harms

did not favor either side, and that the public interest weighed against an injunction. [ECF No. 236].

Since the denial of his original motion for injunctive relief, Mr. Bakambia argues that the circumstances relating to his stomach complaints and his headaches have changed. With regard to his stomach-related symptoms, he asserts that he has been experiencing abdominal pain since October 2019, when he claims to have been administered a neuroleptic drug instead of his prescribed medication. In May 2020, Mr. Plackner noted there was no clear etiology or significance for his ongoing abdominal pain, and other diagnoses since then have consistently documented his ongoing stomach issues. However, Mr. Bakambia argues that his treatment team did not develop a plan to address his concerns. Further he asserts that in January 2021, he was taken to an emergency room, and X-rays revealed gas-filled loops of bowel in the upper left quadrant of his stomach. [ECF No. 126-1 at 2–5]. On September 15, 2021, Mr. Bakambia had a medical appointment concerning, among other things, his ongoing complaints of abdominal pain, and the plan was to obtain additional laboratory studies. [ECF No. 315-1 at 12–13]. His symptoms of stomach pain persisted until, on October 5, 2021, an ultrasound revealed possible hernia and kidney stones. Centurion provider, Dr. Stephen Craane, requested the ultrasound, and the impression suggested further evaluation may be needed to diagnose the presence of kidney stones and, if appropriate, a CT scan may be necessary to diagnose a hernia. [ECF No. 315-1 at 2]. However, Mr. Bakambia alleges that he has not been scheduled for a CT scan or an MRI to further diagnose either possible condition.

With respect to Mr. Bakambia's ongoing headache complaints, he similarly claims that things have changed. On September 15, 2021, Mr. Bakambia was seen by Dr. Craane for concerns of headaches, and for other issues. Dr. Craane recorded Mr. Bakambia's complaints of daily headaches and noted his assertion that it was suggested he see a neurologist during a November 6, 2019 ER visit. Dr. Craane diagnosed Mr. Bakambia with "headaches, persistent, potential mixed type," prescribed a trial of verapamil because Elavil had been ineffective, and instructed Mr. Bakambia to notify medical staff if he experienced further difficulties. [ECF No. 315-1 at 12–13]. On October 1, 2021, he saw Dr. Craane in sick call, again raising complaints of headaches and explaining that the verapamil trial had been ineffective. Mr. Bakambia stated that he experienced episodes of lightheadedness on the medication and was concerned that it could cause cardiac issues. Mr. Bakambia "voice[d] considerable interest in undergoing evaluation per a neurologist." Dr. Craane's note indicates that the treatment plan was as follows: "elect to file for a neurology evaluation for patient's headahces." [ECF No. 315-2 at 13–14]. According to Mr. Bakambia, he asked Dr. Craane how this was different from any suggestion that neurology consultation was "elective," and Dr. Craane told him the "elect to file" language was more likely to result in a trip to neurology for evaluation within the next two months. [ECF No. 314 at 11; ECF No. 315 at 2].

**Legal Mail**

Mr. Bakambia's allegations regarding the DOC's handling of legal mail begins with a recently posted change to the prison's mail policy. On September 21, 2021, the DOC posted a memo stating the following:

4

> Beginning on Monday September 27, 2021 we will be changing how legal mail is distributed to incarcerated individuals. Legal mail will be distributed in property. lf you receive legal mail you will receive a pass to report to property. Every attempt will be made to distribute legal mail within 48 hours of receipt as noted in the "Mail" policy 302.020. Legal mail will now be scanned by a new machine that can detect foreign substances, including illicit drugs, at the time the legal mail is opened in front of the incarcerated individual.

[ECF No. 315-2 at 20].

On September 28, 2021, Mr. Bakambia was given a pass to come to the property room during his canteen run to pick up legal mail. He says that the staff member who opened the mail in front of him did not run it through any machine because the machine had not yet arrived. Mr. Bakambia told the staff member that this unreasonably delayed his receipt of legal mail because it may have arrived as early as September 25th, and was not held for the purpose of being scanned through a new machine. [ECF No. 315 at 15]. Mr. Bakambia also received a pass to go to property to pick up legal mail on October 12, 2021. [ECF No. 315-2 at 41].

### *Alleged Spoliation and RICO Act Violations*

Mr. Bakambia's allegations of spoliation concern alleged suppression of medical records. On May 14, 2021, Mr. Bakambia was seen in Health Services at MCF-Stillwater by Nurse Practitioner Stacy Woodard for complaints of pain and bruising following a blood draw. In the progress note, Nurse Woodard wrote:

> Patient also stated that he thought that this visit was for his migraine headaches. He stated frustration over that this visit was not for that too. He asked about kites at this time and I did let him know I did not have access to any of the kites. His last visit for migraine headaches was on 05/04/2021 and another one previous to that was on 03/09/2021.

[ECF No. 315-2 at 15]. Nurse Woodard also noted that she would make sure he had another follow-up appointment for his headaches. [ECF No. 315-2 at 16].

On October 3, 2021, Mr. Bakambia submitted a DOC Offender Kite Form seeking records of the March 9th and May 4th medical records referenced in Nurse Woodard's progress note. In response an MCF-Stillwater staff member indicated that records from appointments on those dates "do not exist!" [ECF No. 315-2 at 9]. Mr. Bakambia told Dr. Craane that DOC Defendant Kathy Reid removed these notes from his medical records to intentionally interfere with his care and that Dr. Jay Julius Bauder's notes from March 9th or May 4th, 2021 may have contained a referral to neurology. [ECF No. 315 at 10]. Dr. Craane had previously indicated that he could not find these progress notes among Mr. Bakambia's medical records. [ECF No. 315 at 5].

Because these records are not available, Mr. Bakambia asserts that they have been intentionally destroyed, in violation of the RICO Act, 18 U.S.C. §§ 1961–1968. [ECF No. 315 at 14]. However, DOC Defendant Kathy Reid has reviewed Mr. Bakambia's record from March 2021 and May 2021 and located no notes from Dr. Bauder from March 9, 2021 or May 4, 2021. She states, under penalty of perjury, that she did not destroy any of Mr. Bakambia's medical records. She also does not know of, or suspect that, any other DOC employee destroyed any of Mr. Bakambia's medical records. [ECF No. 328 ¶ 10].

## II. Legal Standards

In deciding whether to issue a preliminary injunction, district courts consider four factors:

> (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on

>other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest.

*Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013) (quoting *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981)).

"While no single factor is determinative, the probability of success factor is the most significant." *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013) (citing *Barrett v. Claycomb*, 705 F.3d 315, 320 (8th Cir. 2013)) (internal quotations and citation omitted). "If a party's likelihood of succeeding on the merits is sufficiently low, a court may deny a preliminary injunction even if the other three factors—irreparable harm, balance of harms, and the public interest—weigh in the party's favor." *McMahon v. Delta Air Lines, Inc.*, 830 F. Supp. 2d 674, 688 (D. Minn. 2011). This factor does not require the moving party to "prove a greater than fifty per cent likelihood that he will prevail on the merits." *Dataphase*, 640 F.2d at 113 (rejecting a test that would require the movant to show a "mathematical probability of success at trial"). Instead, the movant is required to show a "fair chance" of succeeding on the merits. *Kroupa v. Nielsen*, 731 F.3d 813, 818 (8th Cir. 2013).

"Even when a plaintiff has a strong claim on the merits, preliminary injunctive relief is improper absent a showing of a threat of irreparable harm." *Roudachevski v. All-American Care Ctrs., Inc.*, 648 F.3d 701, 706 (8th Cir. 2011) (citing *Watkins*, 346 F.3d at 844). To establish irreparable harm for purposes of a preliminary injunction a party must show "that a cognizable danger—more than a 'mere possibility'—exists of a future violation." *C.H. v. Sullivan*, 718 F. Supp. 726, 730 (D. Minn. 1989). "'[A] party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable

relief.'" *Roudachevski*, 648 F.3d at 706 (quoting *Iowa Utils. Bd. v. Fed. Commc'ns Comm'n*, 109 F.3d 418, 425 (8th Cir. 1996)).

The party seeking a preliminary injunction bears the burden of showing that an injunction should issue. *Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003). "The burden is especially heavy where, as in this case, the moving party seeks not to maintain the status quo, but to obtain relief similar to that which it could obtain after a trial on the merits." *Brooks v. Roy*, 881 F. Supp. 2d 1034, 1049 (D. Minn. 2012) (citing *Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 486 (8th Cir. 1993); *Scott v. Benson*, 863 F. Supp. 2d 836, 842 (N.D. Iowa 2012) (same); *Aerotek, Inc. v. Murphy*, No. 4:17CV2469 HEA, 2017 WL 4617109, at * 6 (E.D. Mo. Oct. 16, 2017) (same).

### III. Discussion

As noted at the outset, Mr. Bakambia has asked for several forms of injunctive relief: referrals to medical specialists; changes to how and how quickly the DOC Defendants process his legal mail; an order to show cause related to alleged spoliation of evidence; and a declaration that the Defendants have engaged in violations of the RICO Act. Mr. Bakambia has not shown that he is entitled to any such relief.

#### A. Medical Referrals

##### Irreparable Harm

The motion for a preliminary injunction should be denied because Mr. Bakambia has failed to show that he faces an imminent threat to his health such that there is a clear and present need for equitable relief. Mr. Bakambia received a CT scan of his stomach on November 1, 2021, which revealed a hernia and otherwise normal results. [ECF No. 328-3].

A request for a surgical consultation has been submitted, but the request was considered routine and is being reviewed. [ECF No. 328 ¶ 9; ECF No. 328-4]. This medical evidence reveals no emergency requiring the Court's immediate intervention.

With respect to Mr. Bakambia's request for immediate consultation by a neurologist, the Court similarly finds that the record does not support a finding that there is a threat of irreparable harm. The record shows that Dr. Craane requested a neurology consultation to evaluate Mr. Bakambia's headaches on October 1, 2021. [ECF No. 328 ¶ 6; ECF No. 328-1]. Dr. Craane also requested an MRI of Mr. Bakambia's neck following an evaluation on October 12, 2021. [ECF No. 328 ¶ 7; ECF No. 328-2]. Dr. Craane indicated that his requests for neurology consultation and an MRI for Mr. Bakambia are routine. Both requests are under review pursuant to a DOC policy. [ECF No. 329-1]. That policy provides procedures for practitioners like Dr. Craane to indicate when a request needs urgent attention, but Dr. Craane did not indicate such an urgent need was present. The evidence does not support Mr. Bakambia's claim that he faces an imminent threat of irreparable harm if the Court does not enter an order providing the requested injunctive relief.

The record contains no objective medical evidence demonstrating that the Court's immediate intervention is needed to avoid likely future harm. Under these circumstances, the Court finds that injunctive relief is unnecessary.

### Likelihood of Success—Deliberate Indifference

Analyzing the likelihood of success on the merits requires the Court to evaluate the standards governing Eight Amendment deliberate-indifference claims. The Eighth Amendment prohibits "cruel and unusual punishments." *Estelle v. Gamble*, 429 U.S. 97, 101–

02 (1976). This standard requires each state "to provide medical care for those whom it is punishing by incarceration." *Id.* at 103. Prison officials violate the Eighth Amendment when "they commit 'acts or omissions sufficiently harmful to evidence deliberate indifference to [an inmate's] serious medical needs.'" *Meuir v. Greene County Jail Employees*, 487 F.3d 1115, 1118 (8th Cir. 2007) (quoting *Estelle*, 429 U.S. at 106). In this context, a plaintiff must show "(1) he suffered from an objectively serious medical need, and (2) defendants knew of the need yet deliberately disregarded it." *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004); *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997).

A deliberate-indifference claim based on a failure to provide treatment requires an inmate to establish that "prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Dulany*, 132 F.3d at 1239. "Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoners' serious medical needs." *Id.* (citing *Estelle*, 429 U.S. at 104–05). Mere negligence, however, is not enough to demonstrate a constitutional violation. *Id.* (citing *Estelle*, 429 U.S. at 106).

It is not enough for a prisoner to simply argue that a different course of care would be more effective. Courts have repeatedly noted that a prisoner's "difference of opinion over matters of expert medical judgment or a prescribed course of medical treatment fails to state a federal constitutional question." *See, e.g.*, *Randall v. Wyrick*, 642 F.2d 304, 308 (8th Cir. 1981).

This does not mean that a deliberate indifference claim can never be successful

simply because a prisoner has received some care. Indeed, "a total deprivation of care is not a necessary condition for finding a constitutional violation: 'Grossly incompetent or inadequate care can also constitute deliberate indifference, as can a doctor's decision to take an easier and less efficacious course of treatment.'" *Langford v. Norris*, 614 F.3d 445, 460 (8th Cir. 2010) (quoting *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990)). A defendant may also be liable for intentionally delaying access to medical care. *Allard v. Baldwin*, 779 F.3d 768, 772 (8th Cir. 2015). Where prison officials have provided treatment that is grossly inadequate to address a prisoner's condition, a preliminary injunction requiring the provision of additional necessary care may be appropriate. *Hicklin v. Precynthe*, No. 4:16-CV-01357-NCC, 2018 WL 806764, at *12 (E.D. Mo. Feb. 9, 2018) (rejecting argument from Missouri Department of Corrections that plaintiff was unlikely to succeed on the merits of her Eighth Amendment claim because she was merely disagreeing with the refusal to provide her preferred treatment for gender dysphoria).

      The Court concludes that Mr. Bakambia has not met his heavy burden to show the Defendants have deliberately disregarding his serious medical needs. As before, the record shows that the Defendants have regularly and consistently provided Mr. Bakambia treatment for his headaches and stomach complaints, and Mr. Bakambia has presented no objective medical evidence indicating that immediate intervention is necessary. Indeed, Mr. Bakambia received an ultrasound and a CT scan to evaluate his complaints of persistent stomach discomfort. The CT scan revealed a hernia, and in response Dr. Craane has requested a surgery consultation which is being reviewed under the applicable DOC policy. Likewise, medical providers have continued to see Mr. Bakambia for his complaints of headaches and

neck pain. Dr. Craane requested a neurology consultation and an MRI of Mr. Bakambia's neck, and both requests are pending review pursuant to DOC policy. There is no evidence in the record to suggest that this treatment has been grossly incompetent or inadequate, and Mr. Bakambia's own opinion that the treatment is insufficient is not enough to establish a likelihood of success on the merits. *See Randall*, 642 F.2d at 308 (stating that a prisoner's difference of opinion regarding medical treatment does not establish a constitutional violation. For these reasons, the Court finds that Mr. Bakambia has not demonstrated he is likely to succeed on the merits of his Eighth Amendment claim.

### Conclusion

Because the Court finds that Mr. Bakambia has failed to show a threat of irreparable harm or a likelihood of success on the merits, his motion for a preliminary injunction should be denied. The Court further concludes that it is unnecessary to address the remaining *Dataphase* factors regarding the balance of harms and the public interest.

### B.     DOC Defendants' Handling of Legal Mail

For several reasons, the Court concludes that Mr. Bakambia's motion for injunctive relief should be denied with respect to his claim regarding the handling of his legal mail. First, there is no claim in the Amended Complaint regarding the conduct of DOC officials handling Mr. Bakambia's legal mail, which means that the relief Mr. Bakambia seeks in his motion for a preliminary injunction is unrelated to the conduct underlying his claims. This is true even though Mr. Bakambia has asserted claims against the DOC Defendants regarding his constitutional right of access to the courts. None of his allegations concern the DOC's new policy on handling incoming legal mail. Generally, the purpose of a preliminary

injunction is "to preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits." *Devose v. Herrington*, 42 F.3d 470, 571 (8th Cir. 1994). "[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and conduct asserted in the complaint." *Id.* Even if unrelated new claims "might support additional claims against the same prison officials, they cannot provide the basis for a preliminary injunction" in a lawsuit about a different subject matter. *Id.* "This requirement is widely accepted in the Eighth Circuit." *Munt v. Larson*, No. 15-cv-0582 (SRN/SER), 2015 WL 5673108, at *8 (D. Minn. Sept. 23, 2015) (collecting cases).[1] The absence of a relationship between the relief sought in the motion and that sought in Mr. Bakambia's Amended Complaint supports denial of his motion.

Second, even if the requested injunctive relief bore a sufficient relationship to the conduct alleged in the operative pleading, the Court finds that Mr. Bakambia has not demonstrated that he faces imminent irreparable harm due to the DOC's adoption of the new incoming legal mail policy. The essence of Mr. Bakambia's claim of irreparable harm is that the DOC's policy will potentially delay his receipt of legal mail, which creates a risk that he will not be able to meet important deadlines in this case and other litigation. But his assertion that the DOC policy prevents him from meeting court deadlines is belied by the

---

[1]     Other circuit courts follow *Devose* or otherwise have established an identical rule. *Pacific Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 636 (9th Cir. 2015); *Colvin v. Caruso*, 605 F.3d 282, 299–300 (6th Cir. 2010); *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010); *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997); *accord Kaimowitz v. Orlando*, 122 F.3d 41, 43 (11th Cir.1997); *Stewart v. U.S. I.N.S.*, 762 F.2d 193, 198–99 (2nd Cir.1985).

record. Specifically, although Mr. Bakambia alleged that the DOC policy would interfere with his ability to respond to the pending motion for summary judgment filed by the Centurion Defendants, on November 10, 2021, he timely filed a memorandum in opposition to that motion. Mr. Bakambia's allegations also overlook the reality that there is nothing to prevent him from seeking extensions of deadlines where he did not obtain his legal mail in time to sufficiently prepare a response. Accordingly, the Court finds that Mr. Bakambia has presented no evidence demonstrating that he faces an imminent threat of irreparable harm because of the DOC's new incoming legal mail policy.

Third, despite the lack of relationship between the conduct complained of in the Amended Complaint and the allegations regarding the DOC's new incoming legal mail policy, one could reasonably construe Mr. Bakambia's request as seeking the Court's intervention to require the parties in this case to ensure that Mr. Bakambia receives his legal mail in a timely fashion. Assuming that the Court could order parties to cease engaging in conduct that prevented a *pro se* litigant from meeting deadlines, the party seeking that relief would need to establish that the defendants were, in fact, interfering with his ability to litigate in a timely fashion. To the extent Mr. Bakambia seeks such relief, the Court concludes that his motion should be denied because he has provided no support for his assertion that the DOC adopted its new incoming legal mail policy to purposely impede Mr. Bakambia from exercising his First Amendment rights. Mr. Bakambia references the timing of the policy's adoption, but the mere fact that it was adopted after the close of discovery in this case does not show that the DOC acted with the alleged purpose of impeding his access to the courts. His reference to other inmates' experiences with the new

14

policy[2] do not establish any litigation misconduct by any of the Defendants in this case. Mr. Bakambia's unsupported claims provide no basis for the relief requested in the motion or any other relief relating to the DOC's new policy.

For these reasons, the Court recommends that the motion be denied to the extent Mr. Bakambia seeks an order requiring the DOC to justify its adoption of the new incoming legal mail policy.

### C. Alleged Spoliation and RICO Act Violations

Like his claims regarding the DOC's new incoming legal mail policy, Mr. Bakambia's allegations in his motion regarding the alleged destruction of his medical records is not directly related to his Eighth Amendment deliberate-indifference claims, his First Amendment access-to-courts claims, or his medical-malpractice claims. Although this makes the relief of a preliminary injunction unavailable, the label he chose for filing his motion should not be the basis of denying relief as a kind of procedural "gotcha." Indeed, Mr. Bakambia alleges that the DOC Defendants should be sanctioned for spoliation of evidence, so the Court will evaluate this issue according to those standards.

The authority to impose sanctions for spoliation of evidence arises from a federal court's inherent power. *See Sherman v. Rinchem Co., Inc.*, 687 F.3d 996, 1006-07 (8th Cir. 2012). The imposition of sanctions is within the district court's discretion. *See Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 745 (8th Cir. 2004) (explaining that the imposition of sanctions is reviewed for abuse of discretion).

A spoliation-of-evidence sanctions requires a finding of intentional destruction

---

[2] ECF No. 315-2 at 37–39.

> indicating a desire to suppress the truth. Intent is rarely proved by direct evidence, and a district court has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors.

*Greyhound lines, Inc. v. Wade*, 485 F.3d 1032, 1035 (8th Cir. 2007) (cleaned up). "[W]here a court expressly finds … that there is no evidence of intentional destruction of evidence to suppress the truth, then the district court also acts within its discretionary limits by denying sanctions for spoliation of evidence." *Gallagher v. Magner*, 619 F.3d 823, 845 (8th Cir. 2010).

There is no evidence of intentional destruction of evidence to suppress the truth in this case. The DOC Defendant have confirmed that they do not have medical records concerning Mr. Bakambia's March 9, 2021 and May 4, 2021 appointments with Dr. Bauder. However, Kathy Reid has declared that she did not destroy any of Mr. Bakambia's medical records. Mr. Bakambia has provided no support for his assertion that Ms. Reid destroyed these records, nor that she did so to suppress the truth. There is no circumstantial evidence suggesting that the records are missing because they were intentionally destroyed.

Mr. Bakambia has also failed to show a RICO violation by any of the DOC Defendants in connection with the missing medical records or the medical care he has received. *Olivier Fam. Ints., Ltd. v. Wright*, 527 Fed. App'x 596, 598 (8th Cir. 2013) (explaining that to prove a RICO violation, a plaintiff must establish (1) the existence of an enterprise, (2) defendant's association with the enterprise, (3) defendant's participation in predicate acts of racketeering, (4) that defendant's actions constitute a pattern of racketeering activity, and (5) that plaintiff's business or property was injured by conduct constituting a violation); *United HealthCare Corp. v. Am. Trade Ins. Co.*, 88 F.3d 563, 570 (8th Cir. 1996) (listing elements required to establish a RICO violation). Therefore, this Court declines to recommend that

the District Court enter an Oder declaring that the Defendants committed any RICO violation or initiate any criminal contempt proceedings.

## Recommendation

For the reasons discussed above, the Court recommends that Plaintiff's motion for injunctive relief [ECF No. 313] be **DENIED**.

Date: November 19, 2021

*s/Katherine Menendez*
Katherine Menendez
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.