## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Marc Amouri Bakambia,                    Case No. 20-cv-1434 (NEB/DTS)

      Plaintiff,

v.                                       **REPORT AND RECOMMENDATION**

Paul Schnell, *et al.*,

      Defendants.

---

Plaintiff Marc Amouri Bakambia is an inmate at the Minnesota Correctional Facility-Stillwater (MCF-Stillwater). The Defendants[1] include prison administration officials as well as prison medical staff, all of whom Bakambia claims were deliberately indifferent to his medical needs and caused him "loss of chance of recovery or survival." Bakambia also claims Defendants denied him access to courts. Because the record demonstrates no genuine issue of material fact as to any of these claims, Defendants are entitled to judgment as a matter of law. The Court recommends their motion for summary judgment be granted and Bakambia's claims be dismissed with prejudice.

### FINDINGS OF FACT

### I.    Bakambia's Medical Care

The Court adopts and incorporates the factual findings previously detailed in its Report and Recommendation on the Centurion Defendants' motion for summary judgment. Dkt. No. 369. The key facts for this motion are highlighted here.

---

[1] The Defendants remaining in this lawsuit are employees of the Minnesota Department of Corrections (DOC). This Court previously dismissed claims against the named Centurion Defendants.

On May 20 and 21, 2019, while Bakambia was serving a prison sentence at the Minnesota Correctional Facility in Rush City, MN (MCF-Rush City), three other inmates attacked him. Following the attacks, Bakambia was diagnosed with fractured ribs, posttraumatic stress disorder (PTSD), traumatic brain injury (TBI), and chronic headaches. On July 17, 2019, the DOC transferred Bakambia to MCF-Stillwater. After he arrived at MCF-Stillwater, Bakambia frequently and consistently sought medical treatment for the injuries he sustained in the assault at MCF-Rush City and for other medical issues. He was seen at several medical and mental health appointments by the Centurion Defendants, as well as DOC Defendants Lori Lewis, Monica Arons, and Tammy Lisowy.

Over the ensuing months, Bakambia sought treatment for his diagnosed injuries and other health complaints. On October 15, 2019, Bakambia went to the pill window at MCF-Stillwater's Health Services area and requested his prescription medications—Topamax and Naproxen. However, he alleges that Defendant Lewis administered him a dose of neuroleptic drug instead. Dkt. No. 324 ¶ 34. After taking the medication, Bakambia felt strange, talkative, and out of control of his speech. He experienced shifts in his emotions and a throbbing pain in the "back of his brain." *Id.* These side effects were unlike anything he experienced when taking Topamax or Naproxen. *Id.* Bakambia requested a lab workup to see what medication he was given on October 15, but DOC personnel told him only a primary care provider such as a doctor can order labs. *Id.* ¶ 38; Declaration of Kathy Reid ¶¶ 6,11 & Ex. 3, Dkt. Nos. 347, 347-3. On October 21, 2019, DOC records indicate that Bakambia elected to discontinue Topamax and Naproxen. *Id.* Ex. 4, Dkt. No. 347-4. Further, on October 23, Arons, a DOC nurse, confirmed in writing that she had

"verified via paper MAR [that Bakambia] took Topamax and Naproxen at the [10/15/19] 1030 pill run as ordered by Dr. Quiram." *Id.* Ex. 3, Dkt. No. 347-3.

Bakambia also alleges Defendant Lisowy provided inadequate psychological care in her work as his therapist. Dkt. No. 117 ¶¶ 37, 94. On July 29, 2019, Bakambia saw Lisowy, reporting depression, anxiety, and insomnia. *Id.* ¶ 36. He also complained that he had been denied an MRI and that prison staff were depriving him of access to his legal paperwork. *Id.*; Reid Decl. Ex. 7 at 1 (Lisowy notes), Dkt. No. 347-7. Bakambia requested medication to manage his mental health concerns; Lisowy declined to prescribe any, finding "no evidence of mood symptoms or functional impairment that would warrant a referral for medication," and instead provided Bakambia reading materials on dealing with distress and managing emotions. Reid Decl. Ex. 7 at 1. Lisowy noted that Bakambia seemed frustrated and irritated, appearing "more interested in voicing his complaints versus discussing mental health symptoms." *Id.*

Bakambia visited Lisowy again on February 24, 2020, reporting difficulty falling asleep and that he was "not dreaming." *Id.* at 2. After Lisowy explained that lack of dreaming is not cause for concern, Bakambia again turned to his physical complaints. *Id.* He reported seeing Defendant Arons and being told medical staff would follow up with him. *Id.* Lisowy explained that he needed to address these concerns with medical staff, not mental health staff. *Id.* Bakambia then stated he felt depressed but was "unable to identify symptoms." *Id.* Bakambia also returned to his complaints of insomnia. Lisowy provided self-help guidance to improve his sleep. Lisowy's report from that visit stated "[t]here were no indications of psychotic symptoms, functional impairment, or danger to self or others." *Id.*

3

## II.     Bakambia's Access to Courts

On August 2, 2019, while housed in a segregation unit, Bakambia went to the property department to collect his legal materials. Dkt. No. 117 ¶ 111.[2] Security staff would not allow him to bring all his desired materials back to his cell. Earlier that day, Bakambia's caseworker, Rebecca Erickson, received a call from segregation security staff informing her that Bakambia had tried to smuggle personal items back into his cell along with his legal materials. Erickson Decl. ¶ 3 & Ex. 1, Dkt. Nos. 345, 345-1. Security also indicated they thought Bakambia had an open legal case, but Erickson informed them that in fact he did not have any ongoing legal cases to her knowledge and that Bakambia was trying to contact MCF-Rush City where he had an open grievance. *Id.*

Bakambia claims Erickson ordered security to deny him access to his legal paperwork. He wrote to Erickson telling her the denial of his materials was a violation of his First, Eighth, and Fourteenth Amendment rights and requesting a phone call with attorney Terrence Duggins. Dkt. No. 117 ¶ 112. Erickson reminded Bakambia that his grievance with the other prison is not considered legal work. Erickson Decl. Ex. 1, Dkt. No. 345-1.  DOC policy dictates that staff may only arrange for a phone call with legal counsel if an individual has an upcoming legal deadline in an active case. Declaration of Victor Wanchena ¶ 9 & Ex. 4 (Policy ¶ B.3), Dkt. Nos. 350, 350-1. Erickson informed Bakambia that because he had no upcoming legal deadline, prison policy required that he use the mail or his personal phone time to contact Duggins. *Id.*; Erickson Decl. ¶ 4 & Ex. 1, Dkt. Nos. 345, 345-1. To make a personal call from the prison, an inmate uses a

---

[2] Although his Amended Complaint ¶ 111 says "8/2/20", that appears to be a typographical error, as records show it was August 2 of 2019, not 2020. *See* Dkt. No. 345-1.

personal identification number (PIN). Wanchena Decl. ¶ 8, Dkt. No. 350. Bakambia's PIN had inadvertently changed in August 2019, *id.*, so he was unable to use the phone from August 5-14, 2019. Dkt. No. 117 ¶ 114. On September 1, 2019, Bakambia spoke with Duggins by phone. *Id.* ¶ 116.

Bakambia attempted to set up a meeting with Duggins in October. *Id.* ¶¶ 119-23. The visit was eventually scheduled for October 30, but on the date of the meeting it was moved to the 31st. *Id.* ¶¶ 124-26. The visit lasted only twenty minutes, which Duggins claimed was because "they don't like him here." *Id.* ¶ 126. Attorney visits are typically scheduled for 45-60 minutes. Wanchena Decl. ¶ 6, Dkt. No. 350. The prison only shortens meetings for safety or security reasons, but if an attorney is late, the meeting may be shorter than scheduled. *See id.* Duggins' visit with Bakambia was scheduled for 10:15 a.m. and Duggins had another visit scheduled with a different individual from 9:30-10:15. *Id.* ¶ 7 & Ex. 3, Dkt. Nos. 350, 350-1.

Bakambia tried to mail Duggins two large envelopes on September 23, 2019, but Duggins never received them. Dkt. No. 117 ¶ 116. The mailings were returned marked as having the wrong address. *Id.* Under prison policy, inmates address their own outgoing legal mail. Wanchena Decl. ¶ 3, Dkt. No. 350. While prison staff inspect the contents of outgoing mail in the presence of the inmate, they do not verify the accuracy of the addresses. *Id.* Mail room staff log all outgoing legal mail, noting the date it was sent and the address on the envelope. *Id.*

Bakambia also attempted to send a package to Minnesota Governor Tim Walz on October 10, 2019. Dkt. 117 ¶ 117. He requested a "record of mailing receipt" from prison officials but did not receive one. *Id.* After sending certified mail to the ACLU, the letter was

5

returned to Bakambia on November 22, 2019, marked "unable to forward" and opened. *Id.* ¶ 127. Mail to the governor and the ACLU is considered "special mail" under prison policy. Wanchena Decl. ¶ 5 & Ex. 2, Dkt. Nos. 350, 350-1. Special mail isn't logged in the same way that legal mail is, and the prison does not keep outgoing mail receipts. *Id.*

## CONCLUSIONS OF LAW

### I.     Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Hartsfield v. Nichols*, 511 F.3d 826, 829 (8th Cir. 2008). A fact is material if it might affect the outcome of the case and an issue is genuine if a reasonable jury could find for either party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party must point to specific portions of the record indicating lack of a genuine issue of material fact. *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018) (citing *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011)). It can satisfy its burden by demonstrating evidence that negates an essential element of the non-movant's case or by showing that insufficient evidence exists to support the non-moving party's case. *Id.* The non-moving party must present specific facts demonstrating a genuine issue to defeat the motion. *Anderson,* 477 U.S. at 250. "[A] plaintiff may not simply cite 'unsupported self-serving allegations, but must substantiate his allegations with sufficient probative evidence that would permit a finding in his favor, without resort to speculation, conjecture or fantasy.'" *Kingsley v. Lawrence Cnty.*, 964 F.3d 630, 698 (8th Cir. 2020) (quoting *Reed v. City of St.* Charles, 561 F.3d 788, 790-91 (8th Cir. 2009)).

6

**II.    Defendants Were Not Deliberately Indifferent to Bakambia's Medical Needs**

Bakambia has not presented evidence to create a genuine issue of material fact that Defendants were deliberately indifferent to Bakambia's medical need. Without any proof, no reasonable jury could find for him, and Defendants are entitled to summary judgment.

**A.    Deliberate Indifference Standard**

The Eighth Amendment bars "cruel and unusual punishments" and "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). Those values mandate that the Government must provide medical care to inmates and where it fails to do so, an inmate may experience "pain and suffering which no one suggests would serve any penological purpose." *Id.* at 103. The Government's deliberate indifference to an inmate's serious medical need forms the basis for a 42 U.S.C. § 1983 cause of action. *Id.* at 104. While inmates have the right to receive adequate medical care, they do not have a right to "a particular or requested" treatment. *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). "Disagreement with treatment decisions does not rise to the level of a constitutional violation." *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) (internal citations omitted).

To prevail on a deliberate indifference claim, a plaintiff must prove two elements. The first element is objective: that the inmate has a serious medical need. *Farmer v. Brennan*, 511 U.S. 825 (1994); *see also Dulany,* 132 F.3d at 1239. A medical need is considered sufficiently serious if it has been diagnosed by a doctor or it "is so obvious that even a layperson would recognize the necessity for a doctor's attention." *Camberos*

7

*v. Branstad*, 73 F.3d 174, 176 (8th Cir. 1995). The second element is subjective: that prison officials knew of and deliberately disregarded that serious medical need. *Dulany*, 132 F.3d at 1239. Deliberate indifference requires more than mere negligence, or even gross negligence. *Id.* Medical malpractice may not form the basis of a deliberate indifference claim. *Estelle*, 429 U.S at 106. Indeed, deliberate indifference requires "a mental state 'akin to criminal recklessness.'" *Barton v. Taber*, 820 F3d 958, 965 (8th Cir. 2016) (quoting *Jackson v. Buckman*, 756 F.3d 1060, 1065 (8th Cir. 2014)). The evidentiary burden for this type of claim is "substantial." *Johnson v. Leonard*, 939 F.3d 569, 576 (8th Cir. 2019).

### B.   The Record Does Not Establish Defendants were Deliberately Indifferent to Bakambia's Serious Medical Needs

The parties do not seem to dispute that Bakambia has a serious medical need; nevertheless, Bakambia has not presented evidence that prison officials deliberately disregarded that need.

#### 1.   Neuroleptic Drugs

While Bakambia specifically alleges that Defendant Lewis gave him a neuroleptic drug on October 15, 2019 that caused him adverse effects [Dkt. No. 117 ¶ 51], the factual record does not support that allegation, even assuming such an act is sufficient to constitute deliberate indifference. Lewis was not working on the day Bakambia alleges he received the neuroleptic drug [Lewis Decl. ¶ 3 & Ex. 1, Dkt. Nos. 346, 346-1], and no reasonable juror could conclude otherwise based on the record. Furthermore, the record demonstrates that Defendant Arons confirmed Bakambia received Topamax and Naproxen, not a neuroleptic drug on October 15.  Reid Decl. Ex. 3, Dkt. No. 347-3. Bakambia offers no evidence on this question other than his own naked assertion. In

addition, he presents no evidence that the symptoms he experienced (feeling strange, talkative, out of control of his speech, shifts in his emotions and a throbbing pain in the "back of his brain" [Dkt No. 324 ¶ 34]) were attributable to the medication received on October 15.

### 2.    Denial of Request for Labs and Mental Health Medication

Bakambia also claims Defendants were deliberately indifferent because they failed to run labs on the medications in his system and failed to prescribe medication for mental illness. Merely declining an inmate's specific treatment request does not necessarily give rise to liability for deliberate indifference. *Jolly*, 205 F.3d at 1096; *Jackson*, 756 F.3d at 1063-64. Bakambia's desire to have labs run to determine the medications in his system does not rise to the level of deliberate indifference. Multiple DOC providers told Bakambia that only a doctor can order labs. Reid Decl. Ex. 3, Dkt. No. 347-3. In addition, DOC records show that Defendant Arons verified that Bakambia took Topamax and Naproxen on October 15, 2019, not a neuroleptic drug. *Id.* Bakambia has not presented any evidence that denying him the labs he wanted run withheld "essential care." *Jackson*, 756 F.3d at 1066. This Court has already determined that the Centurion doctors were not deliberately indifferent for not ordering those labs. Dkt. No. 369 at 23-24. Given the lack of proof that the failure to run labs was essential, Defendants are entitled to summary judgment.

Similarly, though Bakambia wanted different treatment for his mental health issues, he has not established deliberate indifference. Lisowy met with Bakambia on two occasions and noted that he complained more about his physical ailments than his mental health concerns. Reid Decl. Ex. 7, Dkt. No. 347-7. He also appeared stable and did not

present mood-related symptoms. *Id.* at 1. Lisowy provided guidance on dealing with distress and managing emotions. *Id.* She also gave him information on improving his sleep. *Id.* at 2. While Bakambia may have wanted different treatment than he received, he has not established a genuine issue of material fact because Lisowy did not "completely refuse[]" to help him with his mental health concerns. *See Jackson*, 756 F.3d at 1066. Without evidence that these denials constitute something akin to criminal recklessness, Bakambia has not met his burden and Defendants are entitled to summary judgment.

## III.    Loss Of Chance Of Recovery or Survival

Defendants argue they are entitled to summary judgment on Bakambia's purported state law claim for "loss of chance of recovery or survival." The Court agrees, for the reasons set forth in its previous Report and Recommendation [Dkt. No. 369].

In his Amended Complaint, Bakambia asserts a claim under the loss of chance of recovery or survival doctrine. Dkt. No. 117 (Count III) at 30-31. Under Minnesota law, this refers to a theory of damages for medical malpractice claims. *Dickhoff ex rel. Dickhoff v. Green*, 836 N.W.2d 321, 336–37 (Minn. 2013) ("Minnesota law permits a patient to recover damages when a physician's negligence diminishes or destroys a patient's chance of recovery or survival."). However, to the extent Bakambia has asserted a medical malpractice claim, his claim fails because he did not submit either of the expert affidavits required to sustain such a claim. Minn. Stat. § 145.682, subd. 2–4 (requiring one expert affidavit to be served with the summons and complaint and another to be filed within 180 days of commencement of the lawsuit). In a case such as this, where any alleged negligence by Defendants does not "speak[] for itself," Bakambia's failure to offer

the affidavits required to support a medical malpractice claim requires its dismissal. *See Bellecourt v. United States*, 994 F.2d 427, 431–32 (8th Cir. 1993) (affirming district court's dismissal of malpractice claim unsupported by timely filing of expert affidavits); *id.* at 432 (citing *Todd v. Eitel Hosp.*, 237 N.W.2d 357, 361 (Minn. 1975) as identifying "having a sponge [left] inside [the] body following surgery" as case where expert testimony would not be required); *see also Flores v. United States*, 689 F.3d 894, 899–900 (8th Cir. 2012) (affirming dismissal of medical malpractice claim where no expert affidavits were provided by the plaintiffs).

## IV.   Defendants Did Not Deny Bakambia Access To Courts

To prove an access to courts claim, Bakambia must demonstrate he suffered an actual injury relating to a pending or contemplated legal claim as a result of Defendants' actions. *Lewis v. Casey*, 518 U.S. 343, 349-350 (1996). A theoretical injury is not sufficient to prevail on the claim; instead, Bakambia must demonstrate he was "hindered [in] his efforts to pursue a legal claim" or "was so stymied" that he could not bring a claim at all. *Id.* at 351. To prove actual injury, a prisoner must demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded. *Hartsfield v. Nichols*, 511 F.3d 826, 832 (8th Cir. 2008). However, "a systemic denial of an inmate's constitutional right of access to courts is such a fundamental deprivation that it is an injury in itself." *Jones v. James*, 38 F.3d 943, 945 (8th Cir. 1994). Allegations of systemic denials of access to courts "embrac[e] the basic adequacy of materials and legal assistance made available to all or subgroups of the prison population." *Chandler v. Baird*, 926 F.2d 1057, 1063 (11th Cir. 1991); *see also Hershberger v. Scaletta*, 33 F.3d 955 (8th Cir. 1994) (citing *Chandler*). In addition to proving actual injury or systemic denial, Bakambia must show Defendants

intentionally blocked his access to the courts. *Scheeler v. City of St. Cloud, Minn.*, 402 F.3d 826 (8th Cir. 2005).

Because Bakambia has failed to demonstrate either a systemic denial of access or an actual injury, and because he has presented no evidence that any alleged denial was intentional, Defendants' motion for summary judgment should be granted.

### A.    Return of Sent Mail

Bakambia bases his access to courts claim in part on the mail he unsuccessfully sent to Duggins, Governor Walz, and the ACLU. The prison mail policies do not rise to the level of a systemic denial nor did the return of this mail cause Bakambia an actual injury. Nor is there evidence that the return of Bakambia's mail was somehow caused by an intentional act by Defendants.

### 1.    Systemic Denial

The prison policies for legal mail did not deny Bakambia his access to courts. Under that policy, Bakambia was required to write the address on the envelope himself. Prison officials do not verify the accuracy of the address on legal mail. Wanchena Decl. ¶ 3, Dkt. No. 350. MCF-Stillwater logs the date of mailing and the address on the envelope. *Id.* These policies do not evince any systemic attempt to deny Bakambia his access to courts. *Smith v. Erickson*, 961 F.2d 1387, 1388 (8th Cir. 1992) (upholding summary judgment because the prison policy in question provided indigent defendants one free mailing per week for legal correspondence); *cf. Hershberger v. Scaletta*, 33 F.3d 955 (8th Cir. 1994).

MCF-Stillwater's mail policies requiring inmates to address their own mail provides prison staff no control over Bakambia's ability to send legal mail. Bakambia alone had the

responsibility to correctly address his mailings. Without proof MCF-Stillwater's policy amounted to a systemic denial, there is no genuine issue of material fact as to this element of Bakambia's access to courts claim.

### 2. Bakambia Did Not Suffer an Actual Injury

Absent proof of a systemic denial, Bakambia must establish evidence of an actual injury caused by the return of his mailings. However, he has provided no such evidence. An actual injury for purposes of this type of claim is "the hindrance of a nonfrivolous and arguably meritorious underlying legal claim." *Hartsfield*, 511 F.3d at 832 (quoting *White v. Kautzky*, 494 F.3d 677, 680 (8th Cir. 2007)). Yet it is unclear from the record what legal claim Bakambia thinks the return of his mail frustrated. The Amended Complaint does not include any specific allegation on this point, and the record contains no evidence that the return of mail addressed to Duggins or the ACLU hindered Bakambia's pursuit of a legal claim. Moreover, his allegations concerning mail sent to Governor Walz contain no nexus to any legal claim. Rather, Bakambia alleges it frustrated his efforts to get "adequate medical care by a specialist." Dkt. No. 117 ¶ 142. Without any evidence that the returned mail caused Bakambia an actual injury, there is no genuine issue of material fact, and Defendants are entitled to summary judgment.

### 3. There is No Evidence of Intentional Denial of Access

Even if Bakambia had provided evidence an actual injury, he is still required to prove Defendants intentionally acted to frustrate his pursuit of a legal claim. The record is devoid of any such proof. There is no evidence prison staff intercepted Bakambia's mail or otherwise tampered with it, or in any way acted with the intent to frustrate Bakambia's pursuit of a legal claim.

### B.      Prison's Limiting Bakambia's Legal Materials

Bakambia also alleges he was denied access to some of his legal materials. Again, he has failed to provide evidence of a systemic denial, actual injury, or intentional conduct. MCF-Stillwater's policy limiting the volume of legal materials inmates may have in their segregation cells is not a systemic denial of Bakambia's rights. As the Supreme Court stated in *Lewis*, "a prison regulation impinging on inmates' constitutional rights 'is valid if it is reasonably related to legitimate penological interests.'" 518 U.S. at 361 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). That case held that a policy restricting access to the prison law library that was designed to address the "special disciplinary and security concerns" regarding inmates in segregation did not violate their right of access to the courts. *Id.* at 362.

In a similar fashion Bakambia, being held in segregation, was subject to MCF-Stillwater's policies restricting the types and amounts of materials he could have with him in his cell, including limiting legal materials in segregation cells to five pounds. Wanchena Decl. ¶ 10, Dkt. No. 350. These policies ensure that inmates will not conceal dangerous contraband within their materials which can "evade detection during cell searches." *Id.* This policy, like the one in *Lewis*, is exactly the type of restriction entitled to deference because of the clear penological interest in keeping inmates and prison staff safe. *See Turner*, 482 U.S. at 89.

Further, Bakambia has failed to establish that the prison's limitation on the volume of legal materials he could keep in his segregation cell caused him any injury or was intended to deny him access to courts. Indeed, the record suggests otherwise. *See Hartsfield*, 511 F.3d at 832.

14

C.     **Meeting with Attorney**

Bakambia alleges the delay in scheduling a meeting with his attorney and the meeting's brief duration violated his right to access the court. Again, however, Bakambia has presented no evidence that the delay in his speaking with Attorney Duggins by phone or the limited (20-minute) duration of that meeting somehow injured him. The record does not indicate the delay or duration was the result of a systemic denial rather than an inadvertent, one-time occurrence. *See Chandler*, 926 F.2d at 1063 (noting systemic denials are those that affect "all or subgroups of the prison population"). Nor has Bakambia provided evidence the delay or duration obstructed his ability to bring a viable legal claim.

Finally, there is no evidence that the delay in scheduling the meeting or its shortened duration were intentional. Bakambia has not provided any evidence the change in his phone PIN was anything but inadvertent. While Duggins appears to have suggested their meeting was short because prison staff "don't like him" [Dkt. No. 117 ¶ 126], that claim is not supported by any evidence. Instead, the record supports the assumption that Duggins' earlier meeting ran long, causing him to be late to his meeting with Bakambia. *See* Wanchena Decl. ¶ 7 & Ex. 3, Dkt. Nos. 350, 350-1.

## RECOMMENDATION

For the reasons set forth above, the Court RECOMMENDS THAT Defendants' motion for summary judgment [Dkt. No. 342] be **GRANTED** and the claims against all remaining Defendants be **DISMISSED WITH PREJUDICE**.

Dated: May 19, 2022                          __s/David T. Schultz____
                                             DAVID T. SCHULTZ
                                             United States Magistrate Judge

**NOTICE**

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).