UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| MARC AMOURI BAKAMBIA, | Case No. 20-CV-1434 (NEB/DTS) |
| Plaintiff, | |
| v. | ORDER ACCEPTING REPORT AND RECOMMENDATION |
| PAUL P. SCHNELL, ET AL., | |
| Defendants. | |

*Pro se* plaintiff Marc Bakambia sued several defendants over alleged mistreatment while in the custody of the Minnesota Department of Corrections ("DOC"). The remaining defendants, who are employees of the DOC, moved for summary judgment. (ECF No. 342.) In a Report and Recommendation, United States Magistrate Judge David T. Schultz recommends granting the motion and dismissing Bakambia's claims against the remaining defendants with prejudice. (ECF No. 408 ("R&R").) Bakambia objects to the R&R. (ECF No. 409 ("Obj.").) Because Bakambia objects, the Court reviews the R&R *de novo*. 28 U.S.C. § 636(b)(1); D. Minn. LR 72.2(b)(3). For the reasons below, the Court overrules the objection, accepts the R&R, and grants the motion for summary judgment.

## BACKGROUND

The R&R provides a thorough factual background of this case, most of which Bakambia does not object to. (R&R at 1–6.) The Court incorporates the R&R's findings of

fact, except those parts to which Bakambia objects. For the findings to which Bakambia objects, the Court addresses the legal import of his arguments below.

## ANALYSIS

Bakambia raises eighteen objections the R&R. His first objection is that the R&R did not consider his opposition or supporting documents.[1] (Obj. at 3–4.) He asks that this Court consider "ALL" of his opposition documents. (*Id.* at 3.) As noted above, the Court reviews this matter *de novo* and considers evidence cited by Bakambia. But "district courts are not required to wade through the entire record of the case on a sua sponte hunt for facts that might support a party's opposition to summary judgment." *Glover v. Bostrom*, 31 F.4th 601, 605 (8th Cir. 2022) (collecting cases); *see Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir. 1984) ("Although pro se pleadings are to be construed liberally, pro se litigants are not excused from failing to comply with substantive and procedural law.").

The Court divides Bakambia's remaining objections into two groups: those relating to his deliberate indifference claim and those relating to his access-to-courts claim.[2]

---

[1] Contrary to Bakambia's assertion, the R&R does consider his evidence, and cites exhibits submitted by Bakambia. (*E.g.*, R&R at 2, 9 (citing ECF No. 324).)

[2] Some of Bakambia's objections relate to findings and conclusions from an earlier report and recommendation. (*See, e.g.*, Obj. at 7–9 (citing ECF No. 369 (recommending dismissal of Centurion defendants)).) Bakambia filed objections to that report and recommendation, which the Court considered and rejected. (ECF Nos. 387, 400.) The Court will not reconsider its ruling on that report and recommendation.

**I.    Objections relating to Bakambia's Deliberate Indifference Claim**

To prevail on an Eighth Amendment deliberate indifference claim, Bakambia must show that he had "objectively serious medical needs" and that "the prison officials actually knew of but deliberately disregarded those needs." *Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997). Prisoners do not have the right to any specific course of treatment, and "prison doctors remain free to exercise their independent medical judgment." *Id.* There is no Eighth Amendment violation when prison staff or healthcare providers are merely negligent or commit simple medical malpractice. *Id.* (citation omitted); *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017) ("[D]eliberate indifference requires a highly culpable state of mind approaching actual intent." (citation omitted)).

*Requests for lab work.* Bakambia objects to the R&R's conclusion that certain defendants told him that only doctors could order lab work, and that Bakambia's requests for lab work did not rise to the level of deliberate indifference. (Obj. at 6–9.) He argues that even if only doctors can order lab work, defendants refused to contact doctors who were at the facility at time of his requests. (*Cf.* ECF No. 379-3 at 6–8 (Oct. 23, 2019 notes in response to Bakambia's requests for lab work that Dr. Quiram had referred Bakambia to see Dr. Shicker).) But the evidence offered by Bakambia does not suggest that any failure to contact a doctor to order lab work was more than negligence or simple malpractice. (*See* ECF No. 369 at 23–24 (report and recommendation finding that Bakambia did not offer evidence suggesting that "failing to order lab work under these

3

circumstances so deviated from the appropriate professional standards that a decision not to do so would constitute deliberate indifference")); *see Dulany*, 132 F.3d at 1239. This objection is overruled.

*Medication taken on October 15, 2019*. Bakambia alleged that defendant Lori Lewis gave him a neuroleptic drug on October 15, 2019. (ECF No. 117 ("FAC") ¶ 51.) He now acknowledges that Lewis was not the person who gave him the drug, as Lewis did not work that day.[3] (Obj. at 12 (asserting that he had discovered the "true name of the person"); *see* ECF Nos. 346, 346-1.) In response to the R&R's finding that Bakambia relies only on his own assertion that he was given a neuroleptic drug on October 15, Bakambia cites a doctor's note from his emergency room visit on November 6 that he suffered from an "underdosing [of] other antiepileptic and sedative hypnotic drugs." (Obj. at 7; *see* ECF No. 379-3 at 24.) But the ER doctor also noted Bakambia's "intentional underdosing of medication regimen." (ECF No. 379-3 at 24.) Bakambia had stopped taking Naproxen and Topamax—which is an antiepileptic drug "with a known side effect of sedation"—on October 21. (ECF No. 369 at 6 (citation omitted); *see* ECF No. 347-4 (medication refusal form).) The day after Bakambia's ER visit, Brent Plackner, P.A., followed up with

---

[3] Bakambia argues that the R&R should not have considered Defendants' evidence that Lewis did not work on October 15 because their answer did not affirmatively state that she did not work that day. (Obj. at 11–12.) This objection is meritless. He also seeks to amend the pleadings to substitute a new defendant who allegedly gave him the neuroleptic drug. (*Id.* at 12–13.) The Court previously considered this request and denied it. (ECF Nos. 402, 407.) The R&R did not address this issue, and the Court declines to reconsider its decision.

Bakambia and explained that Topamax can have "rebound ramifications if they are discontinued abruptly, which may be a part of what happened yesterday." (ECF No. 347-1 at 7.) The ER doctor's notation does not raise a genuine issue of material fact as to whether Bakambia was given a neuroleptic drug on October 15. *See In re Paul*, 739 F.3d 1132, 1135 (8th Cir. 2014) ("[T]o demonstrate a genuine dispute of material fact, the nonmovant must produce more than 'a mere "scintilla of evidence" in support of his position.'") (citations omitted).

Bakambia also objects to the R&R's conclusion that defendant Monica Arons, R.N., had verified in the paper medical administration record ("MAR") that Bakambia had taken Naproxen and Topamax on October 15. (*See* ECF Nos. 347 ¶ 6, 347-3 (DOC progress note dated Oct. 23, 2019).) He argues that a discrepancy between the electronic and paper MAR about the medications he took on October 15 entitles him to a jury trial. (Obj. at 23–24.) Because he has not raised a genuine issue of material fact as to his claim that Lewis gave him a neuroleptic drug on October 15, any discrepancy about his having taken Naproxen and Topamax that day is immaterial. The objection is overruled.

*Defendant Lynn Noll.* Bakambia objects to the R&R's failure to consider the fact that defendant Lynn Noll was disciplined in 2013, and that "[u]nder her supervision, [Bakambia] was given the neuroleptic drug without his consent." (Obj. at 22.) Because the Court finds that Bakambia has not raised a genuine issue of material fact about whether

5

he was given such a drug, evidence about Noll's history is immaterial. This objection is overruled.

*Defendant Tammy Lisowy*. Bakambia argues that the R&R adopted an incorrect version of his therapy interaction with defendant Tammy Lisowy, and that a genuine issue of material fact exists because a kite Lisowy mentioned in a July 29, 2019 mental health record is not in the record. (Obj. at 9–11.) He challenges Lisowy's assertion that Bakambia had requested medication (he maintains that he did not) that Lisowy refused to prescribe. (*Id.; see* ECF No. 347-7 (July 29, 2019 mental health record).) Even if Bakambia had not requested medication, he offers no evidence that Lisowy's actions suggest a deliberate indifference to his medical need. Rather, the July 29 record reflects that Bakambia was "alert, oriented, calm, and cooperative," and "[a]lthough he reported experiencing anxiety and depression, notable evidence of these symptoms, or any type of distress, was not seen during [their] interaction." (ECF No. 347-7 at 1.) The objection is overruled.

*Judge Menendez's April 26, 2021 Order*. Bakambia asserts that the R&R overlooked claims against Rick Raven and Henry Paddleford. (Obj. at 16–17.) He challenges Defendants' claim that Judge Menendez dismissed Raven and Paddleford "under the COVID claims." (*Id.*) Judge Menendez's April 26, 2021 Order denied Bakambia's request to add COVID-related claims—the only claims alleged against Paddleford. (*See* ECF No. 206 at 2 (describing COVID-related allegations), 4–5; *see* FAC ¶¶ 97, 105, 138–39

(COVID-related allegations against Raven and Paddleford).) As Defendants acknowledged in their summary judgment brief, the complaint includes mail-related allegations against Raven. (*See* ECF No. 343 at 14; FAC ¶¶ 117, 127.) The mail-related claims against Defendants—which necessarily include Raven—are addressed below. This objection is overruled.

*Qualified immunity.* Bakambia also argues that the R&R failed to address Defendants' qualified immunity argument. (Obj. at 20–22.) To overcome the defense of qualified immunity, Bakambia must show that Defendants' actions violated a constitutional right that was "'clearly established' at the time of their alleged misconduct." *Ransom v. Grisafe*, 790 F.3d 804, 810–11 (8th Cir. 2015) (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Because Defendants did not violate Bakambia's constitutional rights, there was no need for the R&R to address the remaining prong of the qualified immunity analysis. *See id.* at 811 n.4 ("Because we conclude that the officers did not violate [plaintiff's] constitutional rights, we need not address whether the right allegedly violated was 'clearly established' at the time of the events." (citation omitted)). This objection is overruled.

In sum, Bakambia has not shown that Defendants' alleged conduct constituted anything but mistakes. *See Est. of Rosenberg ex rel. Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995) (explaining that to prevail on an Eighth Amendment claim, a plaintiff "must show more than negligence, more even than gross negligence, and mere disagreement

with treatment decisions does not rise to the level of a constitutional violation"). The Court overrules Bakambia's objections and accepts the R&R's findings as the deliberate indifference claim.

**II.     Objections relating to Bakambia's Access-to-Courts Claim**

Bakambia asserts several objections relating to his access-to-courts claim. To prove an access-to-courts claim, "a prisoner must establish the state has not provided an opportunity to litigate a claim challenging the prisoner's sentence or conditions of confinement in a court of law, which resulted in actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim."[4] *White v. Kautzky*, 494 F.3d 677, 680 (8th Cir. 2007). To prove an actual injury, Bakambia must show that a nonfrivolous legal claim "had been frustrated or was being impeded." *Id.* (citing *Lewis v. Casey*, 518 U.S. 343, 353 (1996)); *see Hartsfield v. Nichols*, 511 F.3d 826, 833 (8th Cir. 2008) ("Absent an articulation of how the alleged wrongful conduct actually blocked [the inmate's] access to filing a complaint, or caused a filed complaint to be deficient, [the inmate's] alleged injuries are merely speculative.").

---

[4] "A systemic denial of an inmate's constitutional right of access to courts is such a fundamental deprivation that it is an injury in itself." *Jones v. James*, 38 F.3d 943, 945 (8th Cir. 1994). "In the absence of a systemic denial, a successful denial-of-access claim requires a showing of prejudice." *Id.* Bakambia does not claim that he was systematically denied his constitutional right of access to the courts, rather, he claims that his access to the courts and to legal assistance was restricted. He thus must prove actual injury.

8

*Changed phone PIN.* Bakambia assert that the R&R erred by finding that the DOC's changing Bakambia's phone PIN was inadvertent and not a constitutional violation. (Obj. at 4–6.) The R&R explained that Bakambia—who bears the burden of proof—had not provided evidence that the PIN change was anything but inadvertent. (R&R at 15.) According to Bakambia, Defendants' revising their story from asserting that Bakambia had requested the PIN change to the "lies" that the change was inadvertent is proof of intentional conduct.[5] (Obj. at 5.) Without more, Bakambia has not raised a genuine issue of material fact as to whether Defendants intentionally misrepresented the facts. *See Paul*, 739 F.3d at 1135. He also fails to allege an injury sufficient to support an access-to-courts claim. He acknowledges that he spoke with his attorney over the phone several times and met with his attorney, and offers no evidence of having missed any court deadlines.[6]

*Legal mail.* Bakambia argues that the R&R erred by stating that two envelopes that he tried to mail to an attorney "were returned marked as having the wrong address." (R&R at 5 (citing FAC ¶ 116).) The complaint asserts that Defendants "provided . . . a

---

[5] Bakambia also claims that Defendants lied when they asserted that he was refunded for the PIN change, pointing to the lack of such refund in his August and September 2019 trust account statements. (Obj. at 5 (citing ECF No. 397-2 at 182–86).) Defendants asserted that Bakambia "received a refund for the August 2019 PIN change" without showing when that reimbursement occurred. (ECF No. 379-2 at 46 (July 2022 Interrog. Resps.).) The evidence cited by Bakambia does not raise a genuine issue of material fact as to whether Defendants lied.

[6] Indeed, Bakambia has been a prolific filer here before this Court. *See Bakambia v. Schnell*, No. 20-CV-1434(NEB/DTS), CM/ECF Docket (exceeding 410 filings or entries).

9

record that showed [the] wrong address"; the record does not reflect that the envelopes were returned. (FAC ¶ 116.) Even if the envelopes were not returned, the record shows that the envelopes were addressed incorrectly. (*See* ECF No. 350-1 at 1 (outgoing legal mail report reflecting mailing address at issue).) Defendant DOC Associate Warden of Administration Victor Wanchena attested that inmates address their own outgoing mail and the DOC does not verify addresses. (ECF No. 350 ¶ 3.) So the record suggests that the envelopes were not delivered because of Bakambia's failure to address them correctly, not because of intentional misconduct by Defendants.[7] Regardless, Bakambia does not claim to have been prevented from litigating any claims and thus has not shown actual injury resulting from the undelivered envelopes.

Bakambia claims that the R&R erred by "adopt[ing] the DOC Defendants' justification of [the DOC's] mail policy with no evidence that they followed the policy." (Obj. at 14–15.) If Bakambia means to challenge the constitutionality of the mail policy, he did not raise this claim in his complaint. (*Compare* FAC, *with* Obj. at 15 (citing *Beard v. Banks*, 548 U.S. 521, 530–31 (2006) (addressing First Amendment challenge to a Pennsylvania DOC policy)).) He disputes the R&R's finding that "[s]pecial mail isn't logged in the same way that legal mail is, and the prison does not keep outgoing mail receipts." (R&R at 6 (citing ECF No. 350 ¶ 5; ECF No. 350-1).) Bakambia argues that—

---

[7] Bakambia attempts to raises question of fact about the envelopes sent to his attorney by citing evidence of kites he sent to MCF-Moose Lake. (Obj. at 13–14.) The Court fails to see the relationship between the two incidents.

10

unlike MCF-Stillwater—MCF-Rush City did identify the staff who processed his mail. (Obj. at 15–16.) The written policy does not require the identification of the processors of special mail. It does provide that special mail "is opened only in the offender's presence." (ECF No. 350-1 at 3.) Bakambia maintains that a piece of his special mail had been opened before he received it. (Obj. at 15–16.) Even if Defendants had violated mail policy, no Section 1983 liability exists for violating prison policy. *Gardner v. Howard*, 109 F.3d 427, 430 (8th Cir. 1997).

*Access to the grievance process.* Bakambia claims that the R&R erred by failing to consider that defendant Rebecca Erickson "lied" about the name of the MCF-Rush City's warden "intentionally to mislead him in his grievance process." (Obj. at 17 (citing ECF No. 379-2 at 154, 164).) Bakambia's evidence does not raise a genuine issue of material fact, as he offers no evidence of injury, that is, evidence that he was prevented from filing any grievances or litigation as a result of the misinformation. *See Hartsfield*, 511 F.3d at 832–33 ("Although he has alleged facts which, if true, could constitute a wrong, he has not, for the reasons outlined above, articulated any manner in which he was injured by the offense.").

*Delayed visit with counsel.* Bakambia maintains that his attorney attempted "many times to get in to visit [him], but he was obstructed by the DOC," while other inmates had their visits. (Obj. at 18–19 (citing FAC ¶¶ 121, 123–26 (alleging that Bakambia spoke with his attorney about scheduling a visit, and that the DOC obstructed the visit).) He

11

claims the R&R erred by not finding that the delay of his visit with his attorney until October 30, 2019, was Defendants' intentional attempt to obstruct his ability to have a legal visit. (Obj. at 19.) But the record does not support his assertion that Defendants deliberately delayed this visit. Nor does Bakambia claim that he missed a deadline or was prevented from litigating a case as a result of the delay, and thus suffered no actual injury.

*Limiting legal materials.* In considering Bakambia's claim that Defendants limited his access to legal materials, the R&R considered the DOC's segregation cell policy that restricted the type and amount of material an inmate could have in his cell, including legal materials. (R&R at 14; ECF No. 350 ¶ 10.) The Supreme Court has held that "a prison regulation impinging on inmates' constitutional rights 'is valid if it is reasonably related to legitimate penological interests.'" *Casey*, 518 U.S. at 361 (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). The R&R found—correctly—that the limitation on materials in an inmate's cell was tied to legitimate penological interests, as it ensured that inmates cannot conceal potentially dangerous contraband within those materials. (R&R at 14 (citing ECF No. 350 ¶ 10).) Bakambia argues that the R&R erred because he was not informed of this policy and because defendant Erickson "cover[ed] up their deprivation of [Bakambia's] important legal documents" by accusing him of smuggling something into his cell and of gang affiliation. (Obj. at 19–20.) As with his other access-to-courts claims, Bakambia fails to raise a genuine issue of material fact as to his actual injury or prejudice. *See Johnson v. Hamilton*, 452 F.3d 967, 974 (8th Cir. 2006) ("Johnson's conclusory claims that he was

denied access to legal papers and the courts must fail because Johnson has not presented any evidence . . . that would support a finding of injury or prejudice."). These objections are overruled.

For the reasons above, the Court overrules Bakambia's objections and accepts the R&R's findings on the access-to-courts claim.

## CONCLUSION

Based on all the files, records, and proceedings in this case, IT IS HEREBY ORDERED THAT:

1. Bakambia's Objection (ECF No. 409) is OVERRULED;

2. The Report and Recommendation (ECF No. 408) is ACCEPTED; and

3. Defendants' motion for summary judgment (ECF No. 342) is GRANTED and the claims against all remaining Defendants are DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: September 28, 2022          BY THE COURT:

                                   s/Nancy E. Brasel
                                   Nancy E. Brasel
                                   United States District Judge